JAMES TANNER, & another,[1] trustees,[2] vs. BOARD OF APPEALS
OF BOXFORD & another.[3]

No. 03-P-1082.

Suffolk. May 10, 2004. - August 18, 2004.

Present: LENK, KAFKER, & GREEN, JJ.

*Zoning, By-law, Special permit, Hospital, Agriculture. Statute, Construction. Animal. Words, "Hospital."*

This court concluded that a town's zoning by-law did not authorize the opera-
   tion of a stand-alone veterinary hospital because it did not qualify as a
   "hospital" within the meaning of the zoning by-law [649-651]; likewise, it
   was ineligible for a special permit as a hybrid use falling along a spectrum
   between other uses (hospital and dog kennel) for which special permits
   may be granted, as such uses shared few if any common characteristics
   [651-652], and such use was not allowed by right as an agricultural use
   authorized under G. L. c. 40A, § 3 [652].

CIVIL ACTION commenced in the Land Court Department on
June 19, 2001.

The case was heard by *Alexander H. Sands, III, J.*, on mo-
tions for summary judgment.

*Arthur P. Kreiger* for the plaintiffs.

*Joel B. Bard* for the defendants.

GREEN, J. At issue in this appeal is whether the Boxford zon-
ing by-law authorizes the operation of a stand-alone veterinary
hospital, either by right (as an agricultural use) or by special
permit. The defendant board of appeals (board) concluded the
by-law does not permit such use either by right or by special
permit, and a judge of the Land Court, acting on cross motions
for summary judgment, agreed. We add our agreement to the
list.

---

[1]Carolyn Tanner.
[2]Of Tanner Realty Trust.
[3]Town of Boxford.

*Background.* The plaintiffs, licensed veterinarians, have resided in Boxford since 1994 and have operated a veterinary hospital from their residence during that time.[4] They treat primarily ordinary house pets, such as dogs and cats, but also some poultry and "exotic pets."[5] The plaintiffs propose to move from their current residence, but to retain ownership of the property and to expand the veterinary hospital into a substantially larger facility.[6]

The plaintiffs' property is located in a "R-A Residence-Agriculture" district established under the Boxford zoning by-law. The current veterinary hospital is authorized under § 196-13.B(8) of the by-law, which allows "[c]ustomary home or professional occupation conducted in a dwelling or building accessory thereto by a person residing on the premises."[7]

The Boxford zoning by-law is of a type we have described as "prohibitive" rather than "permissive," see, e.g., *APT Asset Mgmt., Inc.* v. *Board of Appeals of Melrose,* 50 Mass. App. Ct. 133, 138 (2000); the by-law states that "[a]ny use not specifically listed herein or otherwise permitted in a district shall be deemed as prohibited." § 196-10. Among other uses permitted as of right in the R-A district are certain specified agricultural uses. Among other uses permitted by special permit in the R-A district are hospitals, clinics, and dog kennels.

The plaintiffs applied for a special permit to authorize the proposed expansion of their veterinary hospital, including their

---

[4]Prior owners apparently have practiced veterinary medicine at the same location since the 1960's.

[5]The record is devoid of further clarifying detail about the various species.

[6]The current structure contains approximately 3,170 square feet, of which approximately 2,000 square feet comprise the plaintiffs' residence. The proposed new structure would contain a total of approximately 6,282 square feet and have the capacity to treat approximately twice the number of animals as the current facility.

[7]At approximately one acre in size, the plaintiffs' lot does not meet the two acre minimum required under the by-law for property in the R-A district. Though one member of the board cited the nonconforming status of the property as an additional (or alternative) basis to deny the plaintiffs' requested special permit, the board's decision does not rely on that ground, and the pleadings below do not raise the issue. The board cites no authority to support its claim that its decision may be affirmed on a ground it did not rely upon either in its decision or in its answer and counterclaim, and we accordingly deny the board's cross-appeal challenging the motion judge's refusal to do so.

proposal to relocate their residence away from the facility. To support their application, the plaintiffs argued that their operation qualifies as a hospital within the meaning of the zoning by-law. In its decision denying the application, the board expressed its view that the definition of "hospital" embraces only facilities providing medical care to persons, and that a veterinary hospital accordingly is not eligible for a special permit. The plaintiffs' appeal to the Land Court challenged that determination and, in an alternative count under G. L. c. 240, § 14A, sought a declaration that their proposed use is allowed by right as an agricultural use authorized under G. L. c. 40A, § 3. The plaintiffs also contend that, even if a veterinary hospital is not a "hospital" within the meaning of that term in the zoning by-law, it is nonetheless eligible for issuance of a special permit as a hybrid use falling along a spectrum between other uses specified as eligible for special permit consideration. *Framingham Clinic, Inc.* v. *Zoning Bd. of Appeals of Framingham*, 382 Mass. 283, 293-294 (1981).

*Discussion.* The Boxford zoning by-law does not define the term "hospital." "In the absence of an express definition, the meaning of a word or phrase used in a local zoning enactment is a question of law . . . to be determined by the ordinary principles of statutory construction." *Id.* at 290 (citation omitted). As the local authority charged with administration of the by-law, the board's interpretation is entitled to some measure of deference. See *Building Commr. of Franklin* v. *Dispatch Communications of New England, Inc.*, 48 Mass. App. Ct. 709, 713 (2000); *APT Asset Mgmt., Inc.* v. *Board of Appeals of Melrose*, 50 Mass. App. Ct. at 138. The board's interpretation is not dispositive. See *Boulter Bros. Constr. Co.* v. *Zoning Bd. of Appeals of Norfolk*, 45 Mass. App. Ct. 283, 284-285 (1998); *Needham Pastoral Counseling Center, Inc.* v. *Board of Appeals of Needham*, 29 Mass. App. Ct. 31, 32 (1990). Where the board's interpretation is reasonable, however, the court should not substitute its own judgment. See *Flemings* v. *Contributory Retirement Appeal Bd.*, 431 Mass. 374, 375 (2000). As with the construction of terms used in any other type of enactment, "[w]e derive the words' usual and accepted meanings from sources presumably known to the [by-law's] enactors, such as

their use in other legal contexts and dictionary definitions."
*Framingham Clinic, supra* at 290, quoting from *Commonwealth v. Zone Book, Inc.*, 372 Mass. 366, 369 (1977).

Extending to the board the deference to which it is due, we think reasonable its interpretation of the word "hospital," as used in the by-law, to describe a facility for the medical treatment of persons but not animals. The hospital use classification appears in § 196-13.B(11)(f) among a series of other uses listed as eligible for a special permit; the complete list consists of "[p]rivate school, cemetery, hospital, clinic, sanitarium nursing home [*sic*], camps of an educational or charitable institution." In context, then, the term "hospital" appears among other institutional uses ordinarily designed to support and serve the needs of people.[8] Though some dictionaries include a facility for the treatment of sick or injured animals as an additional definition of "hospital," that definition is only one among various alternatives and does not appear as a primary use of the term.[9] In addition, we note that Massachusetts licensing statutes distinguish between "hospitals" and facilities designed for the treatment of animals. Compare G. L. c. 111, § 52 (defining "hospital" for purposes of licensure as "any institution . . . established or maintained for the purpose of caring for persons admitted thereto for diagnosis, medical, surgical or restorative treatment . . ."), with G. L. c. 112, § 58A (referring to "animal

---

[8]We acknowledge, but do not view as significant, the relatively recent appearance in some locations of so-called "pet cemeteries."

[9]See, e.g., Webster's Third New Intl. Dictionary 1093 (1993) (listing as definition "3 a" "an institution or place where sick or injured persons are given medical or surgical care" and as definition "3 b" "a place for the care and treatment of sick or injured animals"); V Oxford English Dictionary 406 (1978) ("An institution or establishment for the care of the sick or wounded, or of those who require medical treatment [the current sense]" and "b. A similar establishment for the treatment of sick or injured animals"); American Heritage Dictionary of the English Language 636 (1970) ("1. an institution providing medical or surgical care and treatment for the sick and injured," and "2. a similar place for animals"). Similarly, the dictionary the plaintiffs urge as definitive, Webster's New Intl. Dictionary (2d ed. 1944), recognized the treatment of animals as only one among several uses of the term "hospital." Compare Black's Law Dictionary 871 (rev. 4th ed. 1968) ("An institution for the reception and care of sick, wounded, infirm, or aged persons; generally incorporated, and then of the class of corporations called 'eleemosynary' or 'charitable.' Also the building used for such purpose").

hospital"), G. L. c. 140, § 145B (same), and G. L. c. 112, § 59 (referring to "veterinary hospital").

Similarly unavailing is the plaintiffs' contention that their proposed use is eligible for special permit consideration as a hybrid use falling along a spectrum of other uses (hospital and dog kennel) for which special permits may be granted. In *Framingham Clinic*, 382 Mass. at 293-294, on which the plaintiffs rely, the Supreme Judicial Court concluded that an outpatient abortion clinic was permitted as of right in a district that authorized as of right both professional medical offices and hospitals, even if it did not fit precisely within the definition of professional offices, holding that "[w]hen a municipality allows as of right uses which lie at both ends of the spectrum in terms of a particular category of uses — here, the delivery of medical services — less importance need be attached to fixing precisely where on that spectrum a specific use lies." Three distinctions separate the present case from *Framingham Clinic*. First, both uses framing the spectrum in *Framingham Clinic* were authorized under the by-law as of right, while both uses in the present case require a special permit. Second, the uses in *Framingham Clinic* shared a common essential use characteristic in the delivery of medical services, while the uses in the present case share few (if any) recognizable use characteristics. Third, the by-law at issue in the present case is prohibitive rather than permissive; the by-law at issue in *Framingham Clinic* contained no similar restrictive language. We consider the latter two distinctions, at least in combination, to be fatal to the plaintiffs' argument.

Though both ends of the spectrum proposed by the plaintiffs in the present case fall within the same regulatory category, among uses permissible by special permit,[10] they are otherwise quite different from each other. In contrast to the circumstances in *Framingham Clinic, supra*, where both ends of the narrow spectrum concerned the delivery of medical services, the separate uses of a hospital and a dog kennel share few if any common use characteristics; if they define a spectrum of uses,

---

[10]We did not consider whether the fact that both uses require a special permit (as compared to uses permitted as of right) precludes application of the *Framingham Clinic* "spectrum" analysis.

the spectrum is broad indeed. The plaintiffs suggest that we should compare the relative impacts of the hybrid use to those imposed by the uses specifically authorized, and conclude that a veterinary hospital is eligible for special permit consideration because it would have no more impact on the surrounding area than either a hospital or a dog kennel. Such an approach would engage us in a general qualitative evaluation of the relative impacts of a proposed use not specifically mentioned in the by-law, bearing little direct relationship to the essential character of the uses actually authorized by the by-law. Particularly under a by-law which by its terms prohibits all but those uses specifically allowed, we do not read *Framingham Clinic* to support such wide ranging judicial expansion of the categories of authorized uses beyond those enumerated by the town meeting in the by-law.

Finally, the plaintiffs' contention that a veterinary hospital is an agricultural use protected by the first paragraph of G. L. c. 40A, § 3, is without merit. Our cases that have considered the application of § 3 to animals have looked primarily to the raising and breeding of animals owned by the property owner, and not to the care of animals owned by others, in determining what constitutes an agricultural use within the meaning of the statute. See *Steege* v. *Board of Appeals of Stow*, 26 Mass. App. Ct. 970, 971-972 (1988) (raising and training horses is agricultural use); *Sturbridge* v. *McDowell*, 35 Mass. App. Ct. 924, 925-926 (1993) (raising and breeding dogs owned by property owner is agricultural use; boarding dogs owned by others is not).[11]

*Judgment affirmed.*

---

[11]The plaintiffs mischaracterize as a legal conclusion of general application our inclusion, in *Marshall* v. *Topsfield*, 13 Mass. App. Ct. 425, 427 (1982), of a veterinary hospital among a list of agricultural uses. The listing of a veterinary hospital as an agricultural use in that case is with specific reference to the provisions of the Topsfield zoning by-law. In any event, the case involved a challenge to the validity of a provision of the by-law prohibiting retail use of the plaintiff's land; any discussion of uses falling within the agricultural category was unrelated to the holding and clearly dicta.