Wexler, James H., J.
The plaintiffs, Michael Magane and Sean Magane (the “Maganes”), brought this action pursuant to G.L.c. 40A, §17 seeking judicial review and annulment of the August 13, 2003 decision of the Board of Zoning Appeals for the City of Fitchburg (the “ZBA”). The decision denied the Maganes’ variance and use variance application requesting permission to use an adjacent lot bordering the Maganes’ paving and excavating business for the open-air storage of equipment. The ZBA denied the application citing the construction-type nature of the business and its negative impacts to the surrounding neighborhood. The Maganes contend on appeal that the parking of paving and excavating equipment qualifies as an accessory use permitted as of right, and therefore, does not necessitate the granting of either a variance or use variance. After a non-jury trial and based upon all the credible evidence and the reasonable inferences I may draw from the evidence, the court makes the following findings of fact and rulings of law.
FINDINGS OF FACT
The Maganes own a plot of land numbered 311 Elm Street that consists of two lots (respectively “Lot 1" and “Lot 2”) situated at the corner of Elm Street and Saari Parkway in Fitchburg, Massachusetts. In 1999, the Maganes purchased both Lot 1 and Lot 2 by a single quitclaim deed dated May 24, 1999. The deed contained the right to pass and re-pass over Saari Parkway. Saari Parkway, running Westerly, intersects Elm Street and separates the two lots. Lot 1, shown on Assessor’s Map 19, Block 8, and Lot 2, shown on Assessor’s Map 10, Block 1, share the 311 Elm Street address. Lot 1 is a paved vacant lot comprising 6,641 *391 square feet. Lot 2 covers 6,217 square feet and contains a 2,164 square foot structure.
The Maganes own and operate a business, Dan’s Paving & Excavating, Inc. (“Dan’s Paving”), which has been in existence for approximately thirty years. The Maganes have operated the business at 311 Elm Street since purchasing the property in 1999. The structure on Lot 2 contains an office and three bays. Dan’s Paving uses the following equipment: front loader, paver, grader, roller, dump truck, as well as other construction vehicles. The equipment is parked in front of the office. The equipment is washed and serviced inside the bays of the building. The equipment uses diesel fuel and frequently idles in the parking lot creating noise and an unsightly view.
On or about January 3, 2000, the Maganes requested the Building Commissioner for the City of Fitchburg, Michael McLaughlin (the “Building Commissioner”) to issue a zoning determination regarding Lot 1 and Lot 2. On April 21, 2000, the Building Commissioner issued a zoning determination, which refused to grant permission to use the vacant lot as open-air storage for equipment. In particular, the Building Commissioner found that the prior owner of the land and building at 311 Elm Street had a special permit to use the land as a motor vehicle repair shop and a use variance for the outside storage of motor vehicles. Further, that the ZBA had “granted th[e] variance upon the contingency that [the prior owner] continue to run the garage and be the owner of the garage,” and to terminate upon that contingency ending. The Building Commissioner concluded that the Maganes intended to use the vacant lot “for open air storage of [their] construction equipment” and that such outside storage of construction equipment “must be classified under Construction Yard[, . . . which] is not a permitted use.” Since the prior owner’s variance had terminated, the Building Commissioner directed the Maganes “to approach the [ZBA] for a new Use Variance for the Construction Yard Use.”
On or about May 9, 2000, the Maganes applied to the ZBA and requested to use Lot 1 for open-air storage of construction equipment pursuant to the Fitchburg Zoning Ordinance (“Bylaws”), §181.49, variance, and §181.50, use variance. On June 13, 2000, the ZBA conducted a hearing and voted four to one to deny the Maganes’ variance and use variance application. On June 20, 2000, the ZBA filed its decision with the City Clerk’s Office of the City of Fitchburg. The decision stated that: (1) no findings existed to show that the soil conditions, shape, or topography of Lot 1 required the variance; (2) the Maganes purchased Lot 1 without researching to find the prohibition of the open-air storage of construction vehicles, and thus constituted only financial hardship; (3) the ZBA could not grant the variance without substantial detriment to the public good; and (4) the variance would substantially derogate from the intention and purpose of the Bylaws. The ZBA also rejected the use variance under §181.50 citing that the use failed to serve the public interest and would create a hardship to the neighborhood in that it would negatively affect the safely and quality of life of the neighborhood, noting that the use already had created a disturbance to the existing character of the neighborhood. On July 5, 2000, the Maganes’ filed a complaint for judicial review pursuant to G.L.c. 40A, §17 appealing the ZBA’s June 13, 2000 decision.[3]
In July 2001, the City of Fitchburg amended its Bylaws changing the zoning district of both Lot 1 and Lot 2 to a Neighborhood Business District.[4] The prohibited uses in business districts, including open-air storage, §181.313(E)(1), and construction yard, §181.313(E)(1),[5] remained consistent with that prohibited under the pre-amendment Bylaws.[6]
On September 20, 2001, the Maganes requested that this court remand the matter to the ZBA. On October 19, 2001, the court (Locke, J.) denied that motion.[7]
In the summer of 2003, the Maganes again submitted an application to the ZBA requesting a variance under §181.96, previously §181.49, to use both Lot 1 and Lot 2 for the open-air storage of equipment for Dan’s Paving. On or about August 12, 2003, the ZBA conducted a public hearing, and again, denied the Maganes’ application. Similar to its June 13, 2000 denial, the August 12, 2003 decision denied the variance finding that the Maganes had failed to show that (1) the proposed use was in the public interest; (2) the site sat in a residential district and the business’s operation was a detriment to the neighborhood; (3) the business had been a disturbance and continued to change the neighborhood’s character; and (4) the petition was “not in harmony with the intent and purpose of. . . chapter [40A].”
On or about September 10, 2003 the Maganes filed a complaint for judicial review pursuant to G.L.c. 404, §17, appealing that decision.[8] On October 24, 2003, the Maganes filed a motion to consolidate their July 5, 2000 and September 10, 2003 appeals. The court (McCann, J.) allowed the consolidation. On June 1, 2005, this court (Wexler, J.) heard the consolidated cases sitting without jury.
On June 27, 2005, following the non-juiy trial, pursuant to the parties’ stipulation, the court (Wexler, J.) remanded the matter to the ZBA. Specifically, this court ordered the ZBA to take further hearing on the following two questions:
1. Whether the property owned by [the Maganes] on Elm Street in Fitchburg (described in a deed dated May 24, 1999 and recorded in the Worcester Northern District Registiy of Deeds in Book 3481, page 187), is one lot for zoning purposes within the meaning of §181.10 of the Fitchburg Zoning Ordinance (the “Bylaws”); and
*392 2. Whether the principal use of the building [on Lot 2] is a building trade shop and if so, whether the parking lot on [Lot 1] is an accessory use within the meaning of the [Bylaws].
On or about September 13, 2005, the ZBA conducted a public hearing. On September 26, 2005, the ZBA filed its decision with the City Clerk’s office, which this court received on October 7, 2005. The ZBA answered all questions posed on remand in the negative[9] and stated the following:
A. Parcels are located on opposite sides of a private street, easily separated and formerly having separate uses, are in separate zoning districts and can be easily separated for zoning or real estate purposes.
B. Outside open air storage of heavy construction equipment does not fall under the guidelines of Building Trade Shop, but is more in line with the definition of a Contractor’s Yard — "A facility or are[a] for Storage, open or enclosed, for construction equipment or materials and commercial vehicles associated therewith."
C. Building Trade Shop would be a low impact business, carpenter, electrician, plumber; very little noise or other disturbance to the neighborhood surrounding it. Their sign reads Dan’s Paving[ ] suggesting a construction type business which utilizes heavy equipment
D. This construction business produces offensive noise, vibration, smoke, dust, and odors which impact [residences] ... in a negative way. This is not a low impact Building Trade Shop.
E. Building with yard and vacant lot are being used as a Contractor’s Yard, both parcels are used in connection with the heavy equipment, maintaining, repairing and storage; neither parcel is being used as a Building Trade Shop. A Contractor’s Yard is not allowed in the Neighborhood Business District under our [Bylaws, §] 181.313D(5).
RULINGS OF LAW
I. Standard of Review
General Laws ch. 40A, §17 grants those persons aggrieved by a zoning board’s grant or denial of a variance the right to seek judicial review in the Superior Court. The court hears the matter de novo making independent findings of facts from the evidence presented. Josephs v. Board of Appeals of Brookline, 362 Mass. 290, 295 (1972); see also Barlow v. Planning Bd. of Wayland, 64 Mass.App.Ct. 314, 321 (2005). Based on those findings, the court determines the legal validity of the zoning board’s decision, giving due regard to the board’s high measure of discretion. Pendergast v. Board of Appeals of Barnstable, 331 Mass. 555, 558-59 (1954); Gamache v. Acushnet, 14 Mass.App.Ct. 215, 222 (1982) (stating that local board members are presumed to be familiar with the conditions in its community).
Variances are disfavored in the Commonwealth as a matter of general policy. Bruzzese v. Board of Appeals of Hingham, 343 Mass. 421, 423 (1962). Accordingly, no person has a legal right to a variance. Guiragossian v. Board of Appeals of Watertown, 21 Mass.App.Ct. 111, 115 (1985). In fact, “a judge can seldom, if ever, grant a variance which has been refused by a board of appeals.” Bruzzese, 343 Mass. at 423; accord Guiragossian, 21 Mass.App.Ct. at 115 (noting the infrequency at which annulment occurs). Nevertheless, a court may annul a board’s decision denying a variance if the petitioning party proves that (1) the variance request complies with the statutory perquisites under G.L.c. 40A, §10; and (2) the zoning board denied the variance “solely" on legally untenable grounds, or alternatively, based its decision on unreasonable, whimsical, capricious, or arbitrary grounds. DiGiovanni v. Board of Appeals of Rockport, 19 Mass.App.Ct. 339, 349 (1985). Lastly, while G.L.c. 40A, §10 requires detailed findings when granting a variance; less is necessary when denying a variance. Gamache, 14 Mass.App.Ct. at 220. The findings need only support the board’s exercise of discretion in denying the variance. Ferrante v. Board of Appeals of Northampton, 345 Mass. 158, 162 (1962).
II. Interpretation of the Bylaws
Despite having applied initially for a variance to use both lots for open-air storage of equipment, both of which the ZBA denied, the Maganes now maintain that Bylaws, § 181.323,[10] permit the parking of equipment, including a front loader, a paver, a dump truck, a roller, a grader, and other construction vehicles on Lot 1 as of right. In support, the Maganes assert that Lot 1 and Lot 2 constitute one lot for zoning purposes, that they principally use the structure on Lot 2 as a building trade shop, and' lastly, that the requested parking on Lot 1 incidentally serves Lot 2, and therefore, qualifies as an accessory use under §181.323. While this court agrees that Lot 1 and Lot 2 may constitute one lot for zoning purposes,[11] the balance of the Maganes’ argument is not persuasive.
The question before this court is one of statutory interpretation. Courts construe town bylaws according to the traditional rules of statutory interpretation. See Harvard Crimson v. President & Fellows of Harvard, 445 Mass. 745, 749 (2006); Tanner v. Board of Appeals of Boxford, 61 Mass.App.Ct. 647, 649 (2004). A court will interpret a statute or a town’s bylaws according to the intent of its enactors. Harvard Crimson, 445 Mass. at 749. “In that regard, although interpretation of the by-law is in the last analysis a judicial function, deference is owed to a local zoning board’s home grown knowledge about the history and purpose of its town’s zoning by-law.” Duteau v. Zoning Bd. of Appeals of Webster, 47 Mass.App.Ct. 664, 669 (1999) (question of law); accord Petrillo v. Zoning Bd. of Appeals of Cohasset, 65 Mass.App.Ct. 453, 460 (2006). Given this discretion, the court will not sup *393 plant the board’s interpretation with its own judgment. Tanner, 61 Mass.App.Ct. at 649.
“[T]he primary source of insight into the intent of the Legislature is the language of the statute.” International Fid. Ins. Co. v. Wilson, 387 Mass. 841, 853 (1983). The court begins with the plain language of the bylaws and derives the meaning of the relevant terms consistent with the Bylaws’ framework. Commonwealth v. Welch, 444 Mass. 80, 86 (2005); Owens v. Board of Appeals of Belmont, 11 Mass.App.Ct. 994, 994-95 (1981). If the bylaws fail to define the relevant terms, then the court has the “duty to give [it] a reasonable construction.” Kramer v. Zoning Bd. of Appeals of Somerville, 65 Mass.App.Ct. 186, 192 (2005) (quoting Capone v. Zoning Bd. of Appeals of Fitchburg, 389 Mass. 617, 622 (1983)). In such cases, the court ascertains the “usual and accepted meanings (of the terms) from sources presumably known to the enactors, such as their use in other legal contexts and dictionary definitions.” Cf. Commonwealth v. Bell, 442 Mass. at 124; accord Rowley v. Massachusetts Elec. Co., 438 Mass. 798, 802 (2003). Ultimately, the court seeks the logical and sensible result, consistent with the purpose of the bylaws. North Shore Realty Trust v. Commonwealth, 434 Mass. 109, 112 (2001) (avoids an absurd or unreasonable result); see also Harvard Crimson, 445 Mass. at 749 (“consonant with sound reason and common sense”); Kramer, 65 Mass.App.Ct. at 192.
The court turns to the Maganes’ assertion that they principally use Lot 2 as a building trade shop, and therefore, the Bylaws allow the parking of paving and excavating equipment on Lot 1 as an accessoiy use under §181.323. In making this argument the Maganes essentially contend that the business of paving causes an impact no more than that caused by a builder’s business given the commonality in the equipment used in both businesses. While minimally plausible, the argument misses the Bylaws’ intent. Since the ZBA contends that the Maganes use both Lot 1 and Lot 2[12] as a contractor’s yard,[13] the court addresses the meaning of contractor’s yard and building trade shop together with the meaning of other relevant terms.
Focusing attention on the Bylaws’ plain language, the Bylaws define the following relevant terms instructive to this court’s ruling. Section 181.10 defines a building trade shop as “[a]n establishment for use by the practitioner of a building trade such as a carpenter, welder, plumber, builder, mason or similar occupation.” Bylaws, §181.10 (emphasis added). Accessory uses allowed in business districts under §181.323 include employee, employer, and customer parking, as well as the parking and washing of trucks and trailers necessary to the primary use of the lot. See infra note 10. In addition, §181.325 allows accessory uses that are incidental to the primary use, but are not prohibited under §181.313. See infra note 6.
While the Bylaws allow building trade shops and uses incidental to that use in business districts, the uses below are prohibited in business districts without local board approval. A contractor’s yard is “[a] facility or area for storage, open or enclosed, for construction equipment or materials and commercial vehicles associated therewith.” (Emphasis added.) A lumberyard is “[a] facility for the open or enclosed storage and sale of building materials.” Lastly, open-air storage includes the “storage of materials, merchandise, products or equipment in connection with ... the principal use of the premises, provided that all such storage shall be screened from neighbors and public ways.” Bylaws, §181.10.
A comparison of the permitted uses and the excluded uses produces an apparent conflict. See and compare §181.10 (defining terms appearing throughout the Bylaws), with Bylaws §181.313 (“Table of Principal Use Regulations”). For example, the Bylaws permit as of right the use of building trade shops in business districts under §181.313. Yet the Bylaws prohibit contractor’s yards, open-air storage, and lumberyards as uses in business districts under the same. The clear differences between the uses allowed and uses prohibited supplies the Bylaw’s intent. By expressly permitting building trade shops, §181.313(A)(25), and directly prohibiting contractor’s yards, §181.313(D)(5), lumberyards, §181.313(D)(8), and open-air storage, §181.313(E)(1), it is evident that the Bylaws intended to exclude heavy building and construction like equipment and facilities from business districts.[14] See Middleborough Gas & Electric Dept. v. Town of Middleborough, 48 Mass.App.Ct, 427, 433 (2000) (“[EJxpressio unius est exclusion alterius, ... [is a] canon of construction holding that to express or include one thing implies the exclusion of the other, or of the alternative”). Had the Bylaws intended to associate or allow such equipment in connection with building trade shops as suggested by the Maganes, it would not have explicitly excluded it in business districts. The court cannot interpret the Bylaws to say one thing when it states the opposite. See Collatos v. Boston Ret. Bd., 396 Mass. 684, 687 (1986).
The usage of terms similar to “construction equipment” in other legal contexts provides additional support. To define construction equipment, the Code of Massachusetts Regulations, title 454, §10.00, which sets out the rules and regulations applicable to the construction industry under the Division of Industrial Safety, is instructive. Significant to this case, part 13, §10.133(l)(c) describes heavy machinery and equipment as including a “[b]ulldozer and scraper blades, end-loader buckets, dump bodies, and similar equipment.” Also, §10.135(1) lists the earthmoving equipment as including “scrapers, loaders, crawler or wheel tractors, bulldozers, off-highway trucks, graders, agricultural and industrial tractors, and similar equipment.” Similarly, the equipment concerning this court *394 includes a front loader, a paver, a dump truck, a roller, and a grader. The Maganes’ equipment precisely fits the type of equipment that both §§10.134 and 10.135 address.
Next, the court adds to its analysis the ZBA’s reasonable interpretation of its own Bylaws. The ZBA determined that the Maganes’ business, which included heavy construction equipment, noise, vibration, smoke, dust, and odors, fit within the definition of contractor’s yard, rather than the definition of building trade shop.[15] Further, the ZBA interpreted that a building trade shop was a low impact business, which created little noise or disturbance. Thus, the ZBA determined that the business of paving and excavating substantially differed from what it considered as a building trade shop. The court takes from the ZBA’s interpretation that the Bylaws intended to limit the intensity of work allowed in business districts. The court finds this interpretation reasonable given its consistency with the intent of the Bylaws, and thus, the court affords the decision of the ZBA deference. See, e.g., Duteau, 47 Mass.App.Ct. at 669.
Therefore, given the Bylaw’s plain language excluding the use of contractor’s yard, the meaning of construction equipment as derived from the Bylaws and other Massachusetts legal contexts, as well as the ZBA’s reasonable interpretation, the court finds that the Maganes propose to use Lot 1 as a contractor’s yard and therefore must first attain a variance from the ZBA.
Even assuming that Lot 2 qualifies as a building trade shop, the proposed use of Lot 1 unavoidably qualifies as a contractor’s yard.[16] Therefore, since §181.325 provides that “any use not allowed in the district as a principal use is also prohibited as an accessory use,” it is excluded in business districts without a variance approved by the ZBA.
III. Variance Denial
As previously discussed, the Bylaws prohibit the Maganes’ proposed use; therefore, the court must determine whether the ZBA properly denied the Maganes’ variance application. Pursuant to G.L.c. 40A, §10, a zoning board may grant a variance if specifically finding that, (i) due to the soil conditions, shape, or topography of the applicant’s land or structures, (ii) “a literal enforcement” of the town’s bylaws would “involve substantial detriment, financial or otherwise” to the applicant and (iii) the board can grant the desired relief — the variance — without substantial detriment to the public good or substantial derogation from the bylaws. G.L.c. 40A, §10; Guiragossian, 21 Mass.App.Ct. at 115. The zoning board must deny the variance where the applicant failed to satisfy each statutoiy prerequisite. G.L.c. 40A, §10; see also Kirkwood v. Board of Appeals of Rockport, 17 Mass.App.Ct 423, 428 (1984) (elements are conjunctive).
In the instant case, the Maganes have failed to prove that Lot 1 has “no significant special characteristics beyond the lack of conformity with [local] zoning requirements”; and thus have failed to satisfy the three statutoiy prerequisites under G.L.c. 40A, §10. Paulding v. Bruins, 18 Mass.App.Ct. 707, 710 (1984). First, the Maganes have shown no facts showing that the size and shape of Lot 1 precludes other conforming uses. Id. (variance upheld because of lot’s pork-chop-shape), discussed in Shafer v. Zoning Bd. of Appeals of Scituate, 24 Mass.App.Ct. 966, 967 (1987) (size of lot should not be confused with its shape). Second, the Maganes have produced no facts showing that they will sustain a substantial hardship. In particular, Lot 1 has no unique plight making impracticable the lot’s other reasonable and conforming uses. Brackett v. Board of Appeals of Boston, 311 Mass. 52, 60 (1942). The record simply lacks evidence showing more than a mere “deprivation of potential advantage,” or more than a purely financial hardship, especially considering that the hindrance of an adjacent lot’s potential use is not a hardship justifying a variance. Cf. Bruzzese, 343 Mass. at 423 (analyzing under G.L.c. 40A, §21). Third, the record contains no facts showing that the requested use would have only a minimal affect on surrounding property, would not constitute a substantial detriment to the public good, or substantially derogate from the bylaws. See G.L.c. 40A, §10.
Therefore, the court finds that the ZBA acted properly within its authority in denying the Maganes’ variance and use variance application.
ORDER
Accordingly, for the reasons stated above, the Plaintiffs’ appeal under G.L.c. 40A, §17 is DENIED. It is therefore ORDERED that judgment enter AFFIRMING the decision of the Fitchburg Zoning Board denying the Plaintiffs’ variance and use variance application.

Worcester Superior Court Civil Action No. 2000-1333.

Before the amendment, Lot 1 was in a Residential C District, and Lot 2 was in a Central Business District.

The Bylaws define “contractor’s yard” in §181.10 and reference the term in §181.3216 regarding residential districts. Yet, the Table of Principal Uses in §181.313 uses the term “construction yard.” In fact, the term construction yard appears only in 181.313. The court finds this inconsequential. Neither party points out the discrepancy. Even the Building Commissioner and the ZBA use different terms. However, while the terms may differ, the meaning intended does not. Therefore, the court considers the mistake irrelevant and finds the two terms synonymous.

The Table of Principal Use Regulations, Bylaws, §181.313, sets out the principal uses permitted and prohibited in each district. On the y-axis the table organizes the uses into five sections, including Residential Uses, §(A), Exempt and Institutional Uses, §(B), Commercial Uses, §(C), Indus *395 trial Uses, §(D), and Other Uses, §(E). On the x-axis, the table lists dthe twelve recognized districts, which extend from the general districts, including Residential, Business, Institutional, and Industrial. For example, “NBD,” standing for Neighborhood Business District, occupies column seven. Lastly, the table places within its grid notations indicating whether the particular use is either permitted, prohibited, or otherwise allowed via special permit in each district.

On June 5, 2003, the Building Commissioner sent a letter regarding the Maganes’ continued operation of Dan’s Paving in violation of a cease and desist order. The Office of the Building Commissioner had issued a cease and desist order, #1458, on February 2, 2001. After the court’s October 19, 2001 denial of the motion for remand, the Building Commissioner sent the June 5th letter again ordering the Maganes to cease and desist from operating their business and to remove all equipment and materials from the vacant lot.

Worcester Superior Court Civil Action No. 2003-1759A.

The Maganes timely appealed the September 13, 2005 decision.

Section §181.323 sets out the allowed accessory uses in business districts as follows:
[§1181.3231. Parking. Parking for employers, employees, customers and other uses of the business.
[§1181.3222. Truck or Trailer Parking. Truck or Trailer parking, cleaning and washing, provided that trucks or trailers are necessary for the conduct of the principal use.
[§1282.3233. Drive-up and Walk-up Facilities. Drive-up and walk-up facfiities for banks, restaurants and other businesses may be authorized after site plan review pursuant to Section 181.94.
[§1181.3234. Seasonal Outdoor Dining. Seasonal outdoor dining, such as a sidewalk cafe, is an accessory use to a lunchroom, restaurant, cafeteria or similar place, provided that if situated upon publicly owned land, evidence of a lease and/or license must be provided to the Building Commissioner.
Id. (emphasis in original).

 Section §181.32 requires that the lots constitute one lot for zoning purposes. That section provides in pertinent part, “Accessory uses shall be permitted in all districts on the same lot with the principal use, subject to the [sections that] follow! ]•” Generally, the courts treat commonly owned adjoining lots as one lot for zoning purposes. Seltzer v. Board of Appeals of Orleans, 24 Mass.App.Ct. 521, 522 (1987); Sheehan v. Zoning Bd. of Appeals of Plymouth, 65 Mass.App.Ct. 52, 58 n.8 (2005). This court sees no reason to depart from that well-established principle. Therefore, regarding the first question posed on remand, this court considers Lot 1 and Lot 2 one lot for zoning purposes.

Note, however, that the court limits its findings to Lot 1. While Lot 2’s use bears significance to the question whether Lot l’s use is as of right, the proper use of Lot 2 has not been properly appealed pursuant to c. 40.A, §17.

The Bylaws define “contractor’s yard” in §181.10 and reference the term in §181.3216 regarding residential districts. Yet the Table of Principal Uses in §18.313 uses the term “construction yard,” a term which appears only in that section. The court finds this inconsequential. Neither party points out the discrepancy. Even the Building Commissioner and the ZBA use different terms. However, while the terms may differ, the meaning intended does not. Therefore, the court considers the mistake irrelevant and finds the two terms synonymous.

A1so, the table in §181.313 categorizes the uses of construction (contractor’s) yard and lumberyard as industrial uses. The Bylaws generally prohibit industrial uses in neighborhood business districts, with the exception of the following uses, including earth removal or timber harvesting, light manufacturing, manufacturing, research and testing, computer hardware and development, and antenna transmission, which the Bylaws allow under special permit from the planning board pursuant to §181.93.

As discussed previously in the above findings, the Building Commissioner characterized the Maganes’ equipment as construction equipment and determined that the Construction Yard Use that the Maganes desired necessitated a variance.

The Maganes’ application requested permission to use Lot 1 for open-air storage. The requested use concerning this court has not changed. Yet the activity may be classified under more than one use, both open-air storage and construction yard. Considering that “the more specific classification governs, (and) if equally specific, the more restrictive shall govern,” here the definition of contractor’s yard is the most restrictive and therefore applies. See Bylaws §181.312; accord Planning Bd. of Hingham v. Hingham Campus, LLC, 438 Mass. 364, 367 (2002).