QUENTIN HEIM ET AL. *v.* ZONING BOARD OF
APPEALS OF THE TOWN OF
NEW CANAAN ET AL.
(SC 18088)

Norcott, Katz, Vertefeuille, Zarella and Schaller, Js.

---

Argued April 15—officially released September 2, 2008*

* Following reconsideration by this court, this opinion has been super-seded. See *Heim* v. *Zoning Board of Appeals*, 289 Conn. 709, 960 A.2d 1018 (2008).

*Brenden P. Leydon,* for the appellants (plaintiffs).

*Louis Ciccarello,* for the appellee (named defendant).

*Michael P. Sweeney,* with whom, on the brief, was *Amy E. Souchuns,* for the appellees (intervening defendants).

*Opinion*

VERTEFEUILLE, J. The present case arises from the decision of the named defendant, the zoning board of appeals (board) of the town of New Canaan (town), denying the appeal of the plaintiffs, Quentin Heim and Sandy Deasi, from the issuance of a zoning permit for the operation of a veterinary clinic to the defendant Gen Three, LLC, which had applied for the permit on behalf of the intervening defendants, veterinarians Andrew Rappaport and Daniel Hochman.[1] The plaintiffs appeal from the judgment of the trial court denying their appeal from the decision of the board. The issues presented in this certified appeal[2] are whether the trial court properly concluded that: (1) a veterinary clinic constitutes a "medical, dental or similar health-oriented" facility as permitted by chapter 60, article X, § 60-10.1 (B) of the New Canaan zoning regulations;

---

[1] Gen Three, LLC, the applicant for the zoning permit, was a defendant in the plaintiff's appeal to the board, as well as in the appeal to the trial court, but did not participate in the appeal in this court. Accordingly, we refer to Rappaport, Hochman and the board jointly as the defendants.

[2] The plaintiffs filed in the Appellate Court a petition for certification to appeal from the judgment of the trial court. General Statutes §§ 8-9 and 8-8 (o). Following the Appellate Court's grant of certification, we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

and (2) the illegal conditions attached to the permit were severable because they were not integral to the decision to issue the permit.[3] We conclude that although the trial court properly determined that a veterinary clinic falls within the town's zoning regulations as a "health-oriented" facility, the trial court improperly severed the imposed conditions and affirmed the issuance of the permit. Accordingly, we reverse the judgment of the trial court.

The record reveals the following undisputed facts and procedural history that are relevant to our resolution of this appeal. Gen Three, LLC, owns property at 73 Grove Street in New Canaan (property). The property, which consists of 0.57 acres of land and a two-story wood frame building, is located within a business zone that borders a residential neighborhood. Gen Three, LLC, submitted an application for a zoning permit to the New Canaan zoning enforcement officer to allow the operation of a veterinary clinic on the property. The application proposed no modification or expansion of any kind to the exterior of the existing building, and showed only interior improvements to ready the space for use as a veterinary clinic, such as the installation and placement of "cabinets, exam tables, etc."

The zoning enforcement officer thereafter referred the application to the town planning and zoning commission (commission) because he concluded that the regulations "were unclear as to whether [the operation of a veterinary clinic] was allowed in the zone . . . ." The commission discussed the issue at length and on more than one occasion; and ultimately approved Gen Three, LLC's application for the zoning permit,

[3] The plaintiffs also claim that Gen Three, LLC's application was procedurally defective. The plaintiffs did not raise this issue in their petition for certification to appeal filed with the Appellate Court, however, and the issue therefore is beyond the scope of this certified appeal. We decline to address it.

determining that the establishment of a veterinary clinic was "an acceptable use in the [b]usiness [z]one A if certain conditions are met." The commission set forth two conditions in its decision relating to minimizing noise.

The plaintiffs, who own property adjacent to Gen Three, LLC's property, thereafter appealed to the board from the commission's decision approving the application. The board held two public hearings on the appeal and thereafter denied the plaintiffs' appeal by unanimous vote. The board did not agree formally on the reasons for its decision.

The plaintiffs thereafter appealed from the board's decision to the Superior Court pursuant to General Statutes § 8-8 (b).[4] Rappaport and Hochman, who had participated in the appeal before the board, were allowed to intervene as defendants in the appeal to the trial court. After a hearing, the trial court affirmed the decision of the board upholding the commission's decision granting the permit, concluding, in part, that: (1) a veterinary clinic is a permitted use in the business A zone because that zone allows health-oriented offices; and (2) although the conditions imposed on the permit were invalid, they also were not integral to the permit and could be severed. This certified appeal followed.

I

The plaintiffs first claim that the trial court improperly concluded that the town's zoning regulation for the

---

[4] General Statutes § 8-8 (b) provides in relevant part: "Except as provided in subsections (c), (d) and (r) of this section and sections 7-147 and 7-147i, any person aggrieved by any decision of a board, including a decision to approve or deny a site plan pursuant to subsection (g) of section 8-3, may take an appeal to the superior court for the judicial district in which the municipality is located. . . ."

Any person who owns land "within a radius of one hundred feet of any portion of the land involved in the decision of the board" is aggrieved. General Statutes § 8-8 (a) (1). It is undisputed that both plaintiffs satisfy this statutory requirement for aggrievement.

business A zone, which permits "medical, dental or similar health-oriented" offices; New Canaan Zoning Regs., c. 60, art. X, § 60-10.1 (B); permitted the operation of a veterinary clinic in the zone. More specifically, the plaintiffs maintain that the phrase "medical, dental or similar health-oriented" offices clearly and specifically refers to the medical care of human beings, not animals. The plaintiffs also point to chapter 60, article IV, § 60-4.1 (A) (8) of the New Canaan zoning regulations, which, they assert, establishes that animal treatment facilities are not compatible with residential zones.

In response, the defendants contend that the phrase "medical, dental or similar health-oriented" facilities in § 60-10.1 (B) of the town's zoning regulations is ambiguous. The board relies on the dictionary definitions of the terms "similar," "health" and "orient" to demonstrate the broad meaning of the words and their failure to discriminate between human beings and animals. The defendants also assert that the trial court properly considered the board's determination in making its decision, and thus properly concluded that veterinary clinics fall within the purview of "medical, dental or similar health-oriented" offices within the meaning of § 60-10.1 (B) of the town's zoning regulations. We agree with the defendants.

The following additional facts are necessary to our resolution of this claim. The proposed veterinary clinic called for limited hours of operation and examinations by appointment only. Animals would be seen on an outpatient basis only, and "after-hours emergencies were to be referred elsewhere." Additionally, "no boarding or grooming services would be available. Two cages maintained inside the building would be available on those nonroutine occasions when an animal recovering from a medical procedure would require an overnight stay." This information evidenced the intent of Rappa-

port and Hochman to run a small, satellite style veterinary clinic.[5]

We begin our analysis of the plaintiffs' claim by first addressing the appropriate standard of review. "Under our well established standard of review, [w]e have recognized that [a]n agency's factual and discretionary determinations are to be accorded considerable weight by the courts. . . . Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . We have determined, therefore, that . . . deference . . . to an agency's interpretation of a statutory term is unwarranted when the construction of a statute . . . has not previously been subjected to judicial scrutiny [or to] . . . a governmental agency's time-tested interpretation . . . ." (Internal quotation marks omitted.) *Harpaz* v. *Laidlaw Transit, Inc.*, 286 Conn. 102, 108–109, 942 A.2d 396 (2008).

The zoning regulation at issue in the present case has not been subjected previously to judicial scrutiny. Moreover, the board did not indicate that it had applied a time-tested interpretation of the regulation. "Accordingly, we do not defer to the board's construction and exercise plenary review in accordance with our well established rules of statutory construction." *Pasquariello* v. *Stop & Shop Cos.*, 281 Conn. 656, 663, 916 A.2d 803 (2007).

"Resolution of this issue requires us to review the relevant town regulations. Because the interpretation of the regulations presents a question of law, our review is plenary."[6] *Graff* v. *Zoning Board of Appeals*, 277

[5] Rappaport and Hochman operated a larger veterinary facility with boarding and grooming services in a nearby town.

[6] The plaintiffs recognized in their brief, and all parties conceded at oral argument, that the correct standard of review for this issue is plenary.

Conn. 645, 652, 894 A.2d 285 (2006). We also recognize that the "zoning regulations are local legislative enactments . . . and, therefore, their interpretation is governed by the same principles that apply to the construction of statutes." *Wood* v. *Zoning Board of Appeals*, supra, 258 Conn. 699. "Whenever possible, the language of zoning regulations will be construed so that no clause is deemed superfluous, void or insignificant. . . . The regulations must be interpreted so as to reconcile their provisions and make them operative so far as possible. . . . When more than one construction is possible, we adopt the one that renders the enactment effective and workable and reject any that might lead to unreasonable or bizarre results." (Internal quotation marks omitted.) *Graff* v. *Zoning Board of Appeals*, supra, 653. In the present case, we will examine the language of the regulation at issue as well as extratextual sources to determine the meaning of "health-oriented" facilities in § 60-10.1 (B).[7]

We begin with the text of the regulation.[8] The town's zoning regulations provide as follows for a business A zone: "The purpose of this district is to provide areas for single-purpose shopping and services which require

---

[7] We acknowledge that General Statutes § 1-2z requires a threshold determination whether the regulation is ambiguous. In both their brief and at oral argument, the plaintiffs claimed that the language of the zoning ordinance is clear and unambiguous and that "medical, dental and similar health-oriented" offices includes only those offices treating human health. We disagree. It is not at all clear to us that the regulation refers only to human health.

[8] The New Canaan zoning regulations are permissive, rather than prohibitive, in nature. Specifically, the regulations provide: "No building or structure shall be erected, altered or used nor any land used for any other than a purpose or use permitted by these regulations in the zone in which such building or land is located." New Canaan Zoning Regs., c. 60, art. I, § 60-1.4. Permissive zoning regulations require that "[t]he uses which are permitted in each type of zone are spelled out. Any use that is not permitted is automatically excluded." *Gordon* v. *Zoning Board*, 145 Conn. 597, 604, 145 A.2d 746 (1958); see also R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (2d Ed. 1999) § 4.10, p. 64 ("a use is automatically excluded unless it is expressly permitted in the zoning regulations").

on-site parking facilities. . . . Automotive services, drive-in banking and certain professional and personal services which often represent a special-purpose trip are also appropriate uses in this area. . . ." New Canaan Zoning Regs., c. 60, art. X, § 60-10.1 (A). "[*M*]*edical, dental or similar health-oriented offices shall be permitted* . . . ." (Emphasis added.) Id., § 60-10.1 (B).

The key term in § 60-10.1 (B) of the regulations, "health-oriented," is not defined or explained anywhere in the regulations. General Statutes § 1-1 (a) provides: "In the construction of statutes, words and phrases shall be construed according to the commonly approved usage of the language; and technical words and phrases, and such as have acquired a peculiar and appropriate meaning in the law, shall be construed and understood accordingly." "If a statute or regulation does not sufficiently define a term, it is appropriate to look to the common understanding of the term as expressed in a dictionary." (Internal quotation marks omitted.) *Jim's Auto Body* v. *Commissioner of Motor Vehicles*, 285 Conn. 794, 808, 942 A.2d 305 (2008). The word "health" is defined with substantial similarity in a number of dictionaries, each embracing a broad interpretation of the term. "Health" is defined as the state or condition of an *organism*; it is not limited to the health of a person or a human being. See, e.g., American Heritage Dictionary of the English Language (4th Ed. 2000) (health is "[t]he overall condition of an organism at a given time"); Webster's Third New International Dictionary (health is "the condition of an organism or one of its parts in which it performs its vital functions normally or properly"); Black's Law Dictionary (8th Ed. 2004) (health is "[t]he state of being sound or whole in body, mind or soul"). The common usage of "health-oriented" therefore appears to include the health of animals.[9]

___

[9] In his concurrence, Justice Zarella correctly states that "[u]nder the doctrine of ejusdem generis, when a statute or ordinance sets forth a specific

The only provision of the town's zoning regulations that specifically mentions veterinary services is chapter 60, article IV, § 60-4.1 (A) (8), which precludes the establishment of "animal hospitals" in residential zones. In the present case, however, the property is located in a business zone, not a residential zone, and this prohibition therefore does not apply. None of the parties contends that the proposed veterinary clinic resembles or constitutes an animal hospital. Section 60-4.1 (A) (8) of the town's zoning regulations therefore sheds no light on the meaning of "health-oriented."

We always must construe a regulation in light of its purpose. See *West Hartford Interfaith Coalition* v.

enumeration of things, 'general terms will be construed to embrace things of the same general kind or character as those specifically enumerated.' " On the basis of this principle, Justice Zarella asserts that, because the terms "medical" and "dental," in common parlance, refer to services rendered to people, not animals, the term "similar health-oriented offices . . . also should be interpreted to refer to health-oriented facilities for humans." (Internal quotation marks omitted.) Although we acknowledge that the doctrine of ejusdem generis is a recognized principle of statutory construction, we disagree that its application mandates a finding that the term "similar health-oriented offices" should be limited to health-oriented facilities for humans. Indeed, our review of the dictionary definitions of the terms "medical" and "dental" indicates that, like the term "health," they are not limited to services rendered to people.

The American Heritage Dictionary of the English Language (4th Ed. 2000) defines "medical" as "of, or relating to, the study or practice of medicine" and defines "medicine" as the "science of diagnosing, treating, or preventing disease and other damage to the body or mind." Similarly, Webster's Third New International Dictionary defines "medical" as "of, relating to, or concerned with physicians or with the practice of medicine often as distinguished from surgery," and defines "medicine" as the "science and art dealing with the maintenance of health and the prevention, alleviation, or cure of disease . . . ."

The definition of "dental" also is not limited to humans. The American Heritage Dictionary of the English Language (4th Ed. 2000) defines "dental" as "of, or relating to, or for the teeth . . . ." Webster's Third New International Dictionary defines "dental" almost identically as "of or relating to the teeth or dentistry . . . ."

Applying the doctrine of ejusdem generis to the term "similar health-oriented offices" in the regulation in the present case therefore does not preclude veterinary offices.

*Town Council*, 228 Conn. 498, 508, 636 A.2d 1342 (1994) ("[a] statute . . . should not be interpreted to thwart its purpose" [internal quotation marks omitted]). The purpose outlined in § 60-10.1, the introductory section of chapter 60, article X, of the town's zoning regulations clarifies the types of businesses contemplated for the business A zone. The business A zone is intended to provide areas for "single-purpose shopping and services which require on-site parking facilities." New Canaan Zoning Regs., c. 60, art. X, § 60-10.1 (A). Appropriate uses in the business A zone include "[a]utomotive services, drive-in banking and *certain professional and personal services which often represent a special-purpose trip* . . . ." (Emphasis added.) Id. A veterinary clinic is consistent with this stated purpose. First, veterinarians provide professional services. They are practitioners of medicine who hold specialized medical degrees and are licensed and supervised by the state department of health. See General Statutes §§ 20-197, 20-198 and 20-199. Second, a visit to a veterinarian generally is a "single-purpose" because animals generally are not admitted to shops, banks, restaurants and other facilities, and because an appointment is required to obtain a veterinarian's services, it is a "special-purpose" trip. Moreover, a veterinarian provides medical and dental services for animals and therefore is similar to and consistent with, the professional and personal services referred to in the regulation. See New Canaan Zoning Regs., c. 60, art. X, § 60-10.1 (A).

Given the text, meaning and purpose of § 60-10.1 of the town's zoning regulations, we conclude that the proposed veterinary clinic in the present case is a "similar health-oriented" office permitted in the business A zone.[10] Accordingly, we conclude that the trial court

[10] The plaintiffs rely on *Tanner* v. *Board of Appeals*, 61 Mass. App. 647, 813 N.E.2d 578 (2004), to assert that "medical, dental and similar health-oriented offices" include only those treating humans, not animals. See id., 650 ("we think reasonable [the board's] interpretation of the word 'hospital,' as used in the by-law, to describe a facility for the medical treatment of

properly determined that the proposed veterinary clinic is a permitted use in that zone.

## II

The plaintiffs next claim that the trial court improperly severed the illegal conditions imposed by the permit, rather than sustaining their appeal in its entirety and reversing the board's decision. The plaintiffs assert that the trial court failed to apply the appropriate test for determining whether illegal conditions are integral to, and thus not severable from, a zoning permit. More specifically, the plaintiffs contend that the trial court improperly failed to consider whether the commission would have granted the permit without the imposed conditions.

In response, the defendants claim that the trial court's conclusion that the attached conditions were illegal does not mean automatically that the conditions are not severable from the permit. The defendants point out that the conditions were imposed on the permit in order to assuage the neighboring property owners' concerns about noise and other potential problems related to a veterinary clinic, and they assert that if Gen Three, LLC, had contested the imposition of the conditions, it would have succeeded in obtaining the permit without the conditions. We agree with the plaintiffs.

The following additional facts and procedural history are necessary to our resolution of this claim. When the commission approved Gen Three, LLC's application for

persons but not animals"). The plaintiff in *Tanner* applied for a special permit to expand his already existing veterinary hospital. Importantly, the parties in *Tanner* disputed the meaning of the term "hospital," and the Massachusetts Appeals Court concluded that "hospitals" are "institutional uses ordinarily designed to support and serve the needs of people" based on regulatory context and relevant Massachusetts statutes. Id. In the present case, the dispute centers on a broader term, i.e., "health," and different statutes and regulatory context. *Tanner*, therefore, is inapposite.

a zoning permit, it imposed two conditions on the approved application. First, "[o]vernight boarding of animals on any kind of routine basis is not permitted at this location. Emergency boarding of surgical or other patients only is permitted." Second, "[t]he commission reserves the right to require additional modifications to the building at any time in the future, specifically including additional soundproofing as may be needed so that the veterinary clinic use does not cause any adverse impact or disturbance to surrounding property owners." In its official decision letter, the commission stated that it found the proposed veterinary clinic to be "an acceptable use in the [b]usiness [z]one A *if certain conditions are met.*" (Emphasis added.) The zoning enforcement officer later explained to the board that the commission, in making its determination, had been concerned with the potential for noise and other problems expressed by many people opposing the application, so it "decided . . . that the [veterinary clinic] use would be allowed in the zone . . . if certain conditions were met." The goal of the two conditions was to "benefit the neighbors" who had protested vehemently against the establishment of a veterinary clinic at the site in question. The neighbors were very concerned about the possibility of noise—particularly, barking overnight—and so, with the imposition of the two conditions, "the commission was . . . trying to make the whole thing more palatable to the neighbors."

In examining the conditions attached to the permit, the trial court first looked to whether the commission had the authority to impose the conditions or whether the imposition of the conditions was an ultra vires act.[11] The trial court stated that "[t]he court fails to find any authorization within the regulations that allows for such

---

[11] On appeal, none of the defendants claim that either condition was validly imposed.

conditions to be attached to a zoning permit (as opposed to a special permit)."

The trial court then considered whether the illegal conditions were severable from the permit. It concluded that the conditions were not " 'significant' " to the permit. In making its determination, the trial court considered a "principal purpose" of the conditions, which it stated was "to address the concerns of numerous homeowners from the adjacent residential zone relating to potential noise from barking dogs." The trial court therefore concluded that the illegal conditions were not integral to the permit itself, and thus were severable from the permit.

We begin our analysis of this claim by setting forth the appropriate standard of review. A question regarding the severability of illegal conditions to a zoning permit is an issue of law; therefore, our review is plenary. See *Parish of St. Andrew's* v. *Zoning Board of Appeals*, 155 Conn. 350, 353–55, 232 A.2d 916 (1967) (conducting plenary review of severability of invalid conditions to exception); see also *Wood* v. *Zoning Board of Appeals*, supra, 258 Conn. 699 (issue of law requires plenary review).

It is well established that "[w]here a condition, which was the chief factor in the granting of [a permit], is invalid, the [permit] must fall . . . ." (Internal quotation marks omitted.) *Vaszauskas* v. *Zoning Board of Appeals*, 215 Conn. 58, 66, 574 A.2d 212 (1990). "[T]he dispositive consideration [for the court] is whether the condition was an 'integral' part of the zoning authority's decision to grant the [permit] and, if so, the [permit], even if valid in all other respects, cannot be upheld." Id.; see also *Reid* v. *Zoning Board of Appeals*, 235 Conn. 850, 858, 670 A.2d 1271 (1996) ("[W]e have held that if a zoning board would have refused to grant a variance without a particular condition, the condition is an inte-

gral part of the variance. If an integral condition is invalid, then an otherwise valid variance is also invalid.").

In *Vaszauskas* v. *Zoning Board of Appeals*, supra, 215 Conn. 62, this court concluded that the trial court improperly determined that certain invalid conditions could be severed from the zoning variance granted to the plaintiff landowner to allow him to enlarge an existing pond on his property and to excavate a second pond. Specifically, this court stated: "The [zoning board of appeals of the town of Southbury (board of appeals)], during the several hearings conducted on the plaintiff's application, was told by the plaintiff that his intended project would involve the removal of [more than] 300,000 cubic yards of soil from his property and that this would require between three and five truck loads per hour leaving the plaintiff's property, for a period of between two and three years. Under these circumstances, we conclude that the [board of appeals'] decision to grant the plaintiff's application was reached only after it had assured itself that this massive amount of soil would be removed from the plaintiff's property in accordance with the procedures required by the town's applicable soil extraction regulations and, therefore, that the condition was an 'integral' part of its decision to grant the variance. *We cannot assume that the board [of appeals] would have granted the variance if it had been aware that the condition it imposed, the receipt of a temporary extraction permit from the planning commission, could not be fulfilled.*" (Emphasis added.) Id., 67. Thus, the test enunciated in *Vaszauskas* requires that, when we encounter conditions improperly imposed by a zoning authority, we must determine whether the conditions are severable from an otherwise valid zoning permit by asking "if the removal of the condition would in no way destroy the value or effec-

tiveness" of the permit. (Internal quotation marks omitted.) Id., 66.

In the present case, given the undisputed illegality of the two conditions attached to the issued zoning permit, we must ask, in compliance with *Vaszauskas,* whether the commission would have refused to grant the permit without the conditions, or whether it would have made the same decision upholding the permit even if it had known that the conditions could not be satisfied. In light of the substantial neighborhood opposition to the veterinary clinic, principally based on noise concerns, we cannot conclude that the commission would have granted the permit if it had known that the conditions attached to it could not be satisfied. The wording of the commission's approval reinforces our conclusion. The commission found the clinic to be an acceptable use only "*if* certain conditions are met." (Emphasis added.) We therefore conclude that the conditions, which are both invalid and integral to the permit, are not severable from the remainder of the permit. "Where a condition, which was the chief factor in the granting of [a permit], is invalid, the [permit] must fall . . . ." (Internal quotation marks omitted.) *Vaszauskas* v. *Zoning Board of Appeals,* supra, 215 Conn. 66. Accordingly, we conclude that the trial court improperly severed the conditions imposed on the permit and in turn improperly affirmed the issuance of the permit.[12]

---

[12] We cannot help but point out the inherent irony of this situation: the plaintiffs are prevailing here by invalidating conditions originally imposed to address their concerns. In *Floch* v. *Planning & Zoning Commission,* 38 Conn. App. 171, 175 n.5, 659 A.2d 746 (1995), the Appellate Court faced a similar situation: "We note that this is an unusual situation, where an abutting landowner, and not the party to be bound, complains of the illegal conditions, especially where the illegal conditions were designed to benefit the complaining landowner. Nevertheless, we find that reversal of the commission's decision is necessary to preserve the integrity of the zoning process." We reach the same conclusion today.

We briefly distinguish two cases upon which the defendants rely in order to support their position that illegal conditions do not *automatically* render a permit illegal and invalid. Although this court did recognize that principle in both *DeBeradinis* v. *Zoning Commission*, 228 Conn. 187, 635 A.2d 1220 (1994), and *Branhaven Plaza, LLC* v. *Inland Wetlands Commission*, 251 Conn. 269, 740 A.2d 847 (1999), the analysis did not stop there. In both cases, this court ultimately concluded that, because the conditions imposed were "an essential and integral element of [each] commission's decision . . . [their] invalidation required reversal of the entire decision." *DeBeradinis* v. *Zoning Commission*, supra, 203; see also *Branhaven Plaza, LLC* v. *Inland Wetlands Commission*, supra, 285. The defendants' reliance of these cases therefore is misplaced.

The judgment is reversed and the case is remanded to the trial court with direction to render judgment sustaining the plaintiffs' appeal.

In this opinion NORCOTT and KATZ, Js., concurred.

ZARELLA, J., concurring. Although I concur in the majority's decision to reverse the trial court's judgment, I respectfully disagree with the majority's conclusion in part I of its decision that the term "medical, dental or similar health-oriented offices" in chapter 60, article X, § 60-10.1 (B), of the New Canaan zoning regulations includes a veterinary facility. Under the doctrine of ejusdem generis, when a statute or ordinance sets forth a specific enumeration of things, "general terms will be construed to embrace things of the same general kind or character as those specifically enumerated." (Internal quotation marks omitted.) *Hackett* v. *J.L.G. Properties, LLC*, 285 Conn. 498, 513–14, 940 A.2d 769 (2008). Rather than looking at the definition of "health," the majority should more appropriately look to the spe-

cifically enumerated terms, that is, "medical" and "dental." These terms, in common parlance, clearly refer to services rendered to people, not animals. Thus, the general item enumerated, "similar health-oriented offices," also should be interpreted to refer to health-oriented facilities for humans. In my experience, the physical requirements and the problems created by a veterinary office are significantly different from those of a medical office.[1] Thus, I would suggest that the regulation never contemplated the inclusion of veterinary clinics in the phrase "similar health-oriented offices." Although people on occasion may bark at one another, this does not lead to the conclusion that the operation of a veterinary facility is of the same kind or character as a medical or dental office, or that a veterinary facility was contemplated to be within the scope of the zoning regulation.

SCHALLER, J., concurring. Although I concur with the decision of the majority to reverse and direct judgment in this case, I agree generally with the rationale expressed in Justice Zarella's concurrence, which I join. I write separately to emphasize that the key term in chapter 60, article X, § 60-10.1 (B), of the New Canaan zoning regulations[1] is not " 'health-oriented' " standing alone, which can apply broadly to animals as well as to humans, but " '*similar* health-oriented' " which, in

[1] The named defendant, the zoning board of appeals of the town of New Canaan, apparently recognized these differences because it granted the zoning permit application of the defendant Gen Three, LLC, subject to certain conditions, including (1) limited hours of operation, (2) that it would refer after-hour emergencies to other veterinary clinics, (3) that it would not have boarding or grooming facilities on site, and (4) that it would limit to two the number of facilities for animals that require overnight stays. The trial court appropriately determined that these conditions were illegal, a determination with which the majority agrees.

[1] Chapter 60, article X, § 60-10.1 (B), of the New Canaan zoning regulations provides that "medical, dental or similar health-oriented offices shall be permitted" in a business A zone.

my view, restricts the permitted uses to human health-oriented applications. (Emphasis added.) Even if, as the majority asserts in footnote 9 of its opinion, the terms "medical" and "dental" are not strictly limited to human health purposes (although it would be unusual to refer to an office for *animal* dentistry), medical and/or dental offices for *veterinary* purposes certainly are not similar to human health care facilities in common parlance and understanding. I believe that a reasonable interpretation of the language of the regulation indicates that it is restricted to health-oriented offices for the care of humans. See *ATC Partnership* v. *Coats North America Consolidated, Inc.*, 284 Conn. 537, 545, 935 A.2d 115 (2007) ("[i]n construing a statute, common sense must be used and courts must assume that a reasonable and rational result was intended" [internal quotation marks omitted]).