QUENTIN HEIM ET AL. *v.* ZONING BOARD OF
APPEALS OF THE TOWN OF
NEW CANAAN ET AL.*
(SC 18088)

Norcott, Katz, Vertefeuille, Zarella and Schaller, Js.

___

*This opinion supersedes the opinion of this court in *Heim* v. *Zoning Board of Appeals*, 288 Conn. 628, 953 A.2d 877 (2008), which was released on September 2, 2008. In conjunction with the release of this opinion, we are simultaneously granting the defendants' joint motion for reconsideration of our previous decision. See footnote 11 of this opinion.

Argued April 15—officially released December 23, 2008

*Brenden P. Leydon,* for the appellants (plaintiffs).

*Louis Ciccarello,* for the appellee (named defendant).

*Michael P. Sweeney,* with whom, on the brief, was *Amy E. Souchuns,* for the appellees (intervening defendants).

*Opinion*

VERTEFEUILLE, J. The present case arises from the decision of the named defendant, the zoning board of appeals (board) of the town of New Canaan (town), denying the appeal of the plaintiffs, Quentin Heim and Sandy Deasi, from the issuance of a zoning permit for the operation of a veterinary clinic to the defendant Gen Three, LLC, which had applied for the permit on behalf of the intervening defendants, veterinarians Andrew Rappaport and Daniel Hochman.[1] The plaintiffs appeal from the judgment of the trial court denying their appeal from the decision of the board. The dispositive issue presented in this certified appeal[2] is whether the trial court properly concluded that a veterinary clinic constitutes a "medical, dental or similar health-oriented" facility as permitted by chapter 60, article X, § 60-10.1 of the New Canaan zoning regulations.[3] We

[1] Gen Three, LLC, the applicant for the zoning permit, was a defendant in the plaintiff's appeal to the board, as well as in the appeal to the trial court, but did not participate in the appeal in this court. Accordingly, we refer to Rappaport, Hochman and the board collectively as the defendants.

[2] The plaintiffs filed in the Appellate Court a petition for certification to appeal from the judgment of the trial court. General Statutes §§ 8-9 and 8-8 (o). Following the Appellate Court's grant of certification, we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[3] The plaintiffs also present a second issue in this certified appeal: whether the trial court properly concluded that the illegal conditions attached to the permit were severable because they were not integral to the decision to issue the permit. Because we conclude that a veterinary clinic constitutes a "medical, dental or similar health-oriented" facility and is thus a permitted use under the regulations as a matter of right, our resolution of the first issue is dispositive of this case. We therefore do not address the second issue.

conclude that the trial court properly determined that a veterinary clinic falls within the town's zoning regulations as a "health-oriented" facility, and is thus a permitted use under the regulations. Accordingly, we affirm the judgment of the trial court.

The record reveals the following undisputed facts and procedural history that are relevant to our resolution of this appeal. Gen Three, LLC, owns property at 73 Grove Street in New Canaan (property). The property, which consists of 0.57 acres of land and a two-story wood frame building, is located within a business zone that borders a residential neighborhood. Gen Three, LLC, submitted an application for a zoning permit to the New Canaan zoning enforcement officer to allow the operation of a veterinary clinic on the property. The application proposed no modification or expansion of any kind to the exterior of the existing building, and showed only interior improvements to ready the space for use as a veterinary clinic, such as the installation and placement of "cabinets, exam tables, etc."

The zoning enforcement officer thereafter referred the application to the town planning and zoning commission (commission) because he concluded that the regulations "were unclear as to whether [the operation of a veterinary clinic] was allowed in the zone . . . ." The commission discussed the issue at length on more than one occasion, and ultimately approved Gen Three, LLC's application for the zoning permit, determining that the establishment of a veterinary clinic was "an acceptable use in the [b]usiness [z]one A if certain conditions are met." The commission set forth two conditions in its decision relating to minimizing noise.

Additionally, the plaintiffs claim that Gen Three, LLC's application was procedurally defective. The plaintiffs did not raise this issue in their petition for certification to appeal filed with the Appellate Court, however, and this issue therefore is beyond the scope of this certified appeal. We decline to address it.

The plaintiffs, who own property adjacent to Gen Three, LLC's property, thereafter appealed to the board from the commission's decision approving the application. The board held two public hearings on the appeal and thereafter denied the plaintiffs' appeal by unanimous vote. The board did not agree formally on the reasons for its decision.

The plaintiffs thereafter appealed from the board's decision to the Superior Court pursuant to General Statutes § 8-8 (b).[4] Rappaport and Hochman, who had participated in the appeal before the board, were allowed to intervene as defendants in the appeal to the trial court. After a hearing, the trial court affirmed the decision of the board upholding the commission's decision granting the permit, concluding, in part, that: (1) a veterinary clinic is a permitted use in the business zone A because that zone allows health-oriented offices; and (2) although the conditions imposed on the permit were invalid, they also were not integral to the permit and could be severed. This certified appeal followed.

The plaintiffs claim that the trial court improperly concluded that the town's zoning regulation for the business zone A, which permits "medical, dental or similar health-oriented" offices; New Canaan Zoning Regs., c. 60, art. X, § 60-10.1 (B); permitted the operation of a veterinary clinic in the zone. More specifically, the plaintiffs maintain that the phrase "medical, dental or similar health-oriented" offices clearly and specifically

---

[4] General Statutes § 8-8 (b) provides in relevant part: "Except as provided in subsections (c), (d) and (r) of this section and sections 7-147 and 7-147i, any person aggrieved by any decision of a board, including a decision to approve or deny a site plan pursuant to subsection (g) of section 8-3, may take an appeal to the superior court for the judicial district in which the municipality is located. . . ."

Any person who owns land "within a radius of one hundred feet of any portion of the land involved in the decision of the board" is aggrieved. General Statutes § 8-8 (a) (1). It is undisputed that both plaintiffs satisfy this statutory requirement for aggrievement.

refers to the medical care of human beings, not animals. The plaintiffs also point to chapter 60, article IV, § 60-4.1 (A) (8) of the New Canaan zoning regulations, which, they assert, establishes that animal treatment facilities are not compatible with residential zones.

In response, the defendants contend that the phrase "medical, dental or similar health-oriented" facilities in § 60-10.1 (B) of the town's zoning regulations is ambiguous. The board relies on the dictionary definitions of the terms "similar," "health" and "orient" to demonstrate the broad meaning of the words and their failure to discriminate between human beings and animals. The defendants also assert that the trial court properly considered the board's determination in making its decision, and thus properly concluded that veterinary clinics fall within the purview of "medical, dental or similar health-oriented" offices within the meaning of § 60-10.1 (B). We agree with the defendants.

The following additional facts are necessary to our resolution of this claim. The proposed veterinary clinic called for limited hours of operation and examinations by appointment only. Animals would be seen on an outpatient basis only, and "after-hours emergencies were to be referred elsewhere." Additionally, "no boarding or grooming services would be available. Two cages maintained inside the building would be available on those nonroutine occasions when an animal recovering from a medical procedure would require an overnight stay." This information evidenced the intent of Rappaport and Hochman to run a small, satellite style veterinary clinic.[5]

We begin our analysis of the plaintiffs' claim by first addressing the appropriate standard of review. "Under our well established standard of review, [w]e have rec-

[5] Rappaport and Hochman operated a larger veterinary facility with boarding and grooming services in a nearby town.

ognized that [a]n agency's factual and discretionary determinations are to be accorded considerable weight by the courts. . . . Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . We have determined, therefore, that . . . deference . . . to an agency's interpretation of a statutory term is unwarranted when the construction of a statute . . . has not previously been subjected to judicial scrutiny [or to] . . . a governmental agency's time-tested interpretation . . . ." (Internal quotation marks omitted.) *Harpaz* v. *Laidlaw Transit, Inc.*, 286 Conn. 102, 108–109, 942 A.2d 396 (2008).

The zoning regulation at issue in the present case has not previously been subjected to judicial scrutiny. Moreover, the board did not indicate that it had applied a time-tested interpretation of the regulation. "Accordingly, we do not defer to the board's construction and exercise plenary review in accordance with our well established rules of statutory construction." *Pasquariello* v. *Stop & Shop Cos.*, 281 Conn. 656, 663, 916 A.2d 803 (2007).

"Resolution of this issue requires us to review the relevant town regulations. Because the interpretation of the regulations presents a question of law, our review is plenary."[6] *Graff* v. *Zoning Board of Appeals*, 277 Conn. 645, 652, 894 A.2d 285 (2006). We also recognize that the "zoning regulations are local legislative enactments . . . and, therefore, their interpretation is governed by the same principles that apply to the construction of statutes." *Wood* v. *Zoning Board of Appeals*, supra, 258 Conn. 699. "Whenever possible, the

---

[6] The plaintiffs recognized in their brief, and all parties conceded at oral argument, that the correct standard of review for this issue is plenary.

language of zoning regulations will be construed so that no clause is deemed superfluous, void or insignificant. . . . The regulations must be interpreted so as to reconcile their provisions and make them operative so far as possible. . . . When more than one construction is possible, we adopt the one that renders the enactment effective and workable and reject any that might lead to unreasonable or bizarre results." (Internal quotation marks omitted.) *Graff* v. *Zoning Board of Appeals*, supra, 653. In the present case, we will examine the language of the regulation at issue as well as extratextual sources to determine the meaning of "health-oriented" facilities in § 60-10.1 (B) of the town zoning regulations.[7]

We begin with the text of the regulation.[8] The town's zoning regulations provide as follows for the business zone A: "The purpose of this district is to provide areas for single-purpose shopping and services which require on-site parking facilities. . . . Automotive services, drive-in banking and certain professional and personal services which often represent a special-purpose trip are also appropriate uses in this area. . . ." New

---

[7] We acknowledge that General Statutes § 1-2z requires a threshold determination whether the regulation is ambiguous. In both their brief and at oral argument, the plaintiffs claimed that the language of § 60-10.1 (B) of the regulations is clear and unambiguous and that "medical, dental or similar health-oriented" offices include only those offices treating human health. We disagree. It is not at all clear to us that the regulation refers only to human health.

[8] The New Canaan zoning regulations are permissive, rather than prohibitive, in nature. Specifically, the regulations provide: "No building or structure shall be erected, altered or used nor any land used for any other than a purpose or use permitted by these regulations in the zone in which such building or land is located." New Canaan Zoning Regs., c. 60, art. I, § 60-1.4. Permissive zoning regulations require that "[t]he uses which are permitted in each type of zone are spelled out. Any use that is not permitted is automatically excluded." *Gordon* v. *Zoning Board*, 145 Conn. 597, 604, 145 A.2d 746 (1958); see also R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (2d Ed. 1999) § 4.10, p. 64 ("a use is automatically excluded unless it is expressly permitted in the zoning regulations").

Canaan Zoning Regs., c. 60, art. X, § 60-10.1 (A). "*[M]edical, dental or similar health-oriented offices shall be permitted* . . . ." (Emphasis added.) Id., § 60-10.1 (B).

The key term in § 60-10.1 (B) of the regulations, "health-oriented," is not defined or explained anywhere in the regulations. General Statutes § 1-1 (a) provides: "In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language; and technical words and phrases, and such as have acquired a peculiar and appropriate meaning in the law, shall be construed and understood accordingly." "If a statute or regulation does not sufficiently define a term, it is appropriate to look to the common understanding of the term as expressed in a dictionary." (Internal quotation marks omitted.) *Jim's Auto Body* v. *Commissioner of Motor Vehicles*, 285 Conn. 794, 808, 942 A.2d 305 (2008). The word "health" is defined with substantial similarity in a number of dictionaries, each embracing a broad interpretation of the term. "Health" is defined as the state or condition of an *organism*; it is not limited to the health of a person or a human being. See, e.g., American Heritage Dictionary of the English Language (3d Ed. 1992) (health is "[t]he overall condition of an organism at a given time"); Webster's Third New International Dictionary (health is "the condition of an organism or one of its parts in which it performs its vital functions normally or properly"); Black's Law Dictionary (8th Ed. 2004) (health is "[t]he state of being sound or whole in body, mind or soul"). The common usage of "health-oriented" therefore appears to include the health of animals.[9]

---

[9] In his dissent, Justice Zarella correctly states that "[u]nder the doctrine of ejusdem generis, when a statute . . . sets forth a specific enumeration of things, 'general terms will be construed to embrace things of the same general kind or character as those specifically enumerated.'" On the basis of this principle, Justice Zarella asserts that, because the terms "medical" and "dental," in common parlance, refer to services rendered to people, not animals, the term "similar health-oriented offices . . . also should be

The only provision in the town's zoning regulations that specifically mentions veterinary services is chapter 60, article IV, § 60-4.1 (A) (8), which precludes the establishment of "animal hospitals" in residential zones. In the present case, the property is located in a business zone, however, not a residential zone, and this prohibition therefore does not apply. In any case, none of the parties contends that the proposed veterinary clinic resembles or constitutes an animal hospital. Section 60-4.1 (A) (8) therefore sheds no light on the meaning of "health-oriented."

We always must construe a regulation in light of its purpose. See *West Hartford Interfaith Coalition* v. *Town Council*, 228 Conn. 498, 508, 636 A.2d 1342 (1994) ("[a] statute . . . should not be interpreted to thwart its purpose" [internal quotation marks omitted]). The

interpreted to refer to health-oriented facilities for humans." (Internal quotation marks omitted.) Although we acknowledge that the doctrine of ejusdem generis is a recognized principle of statutory construction, we disagree that its application mandates a finding that the term "similar health-oriented offices" should be limited to health-oriented facilities for humans. Indeed, our review of the dictionary definitions of the terms "medical" and "dental" indicates that, like the term "health," they are not limited to services rendered to people.

The American Heritage Dictionary of the English Language (4th Ed. 2000) defines "medical" as "of, or relating to, the study or practice of medicine" and defines "medicine" as the "science of diagnosing, treating or preventing disease and other damage to body or mind." Similarly, Webster's Third New International Dictionary defines "medical" as "of, relating to, or concerned with physicians or with the practice of medicine often as distinguished from surgery," and defines "medicine" as the "science and art dealing with the maintenance of health and the prevention, alleviation, or care of disease . . . ."

The definition of "dental" also is not limited to humans. The American Heritage Dictionary of the English Language (4th Ed. 2000) defines "dental" as "of, or relating to, or for the teeth . . . ." Webster's Third New International Dictionary defines "dental" almost identically as "of, or relating to, the teeth or dentistry . . . ."

Applying the doctrine of ejusdem generis to the term "similar health-oriented offices" in the regulation in the present case therefore does not preclude veterinary offices.

purpose outlined in § 60-10.1, the introductory section of chapter 60, article X, of the town's zoning regulations, clarifies the types of businesses contemplated for the business zone A. The business zone A is intended to provide areas for "single-purpose shopping and services which require on-site parking facilities." New Canaan Zoning Regs., c. 60, art. X, § 60-10.1 (A). Appropriate uses in the business zone A include "[a]utomotive services, drive-in banking and *certain professional and personal services which often represent a special-purpose trip* . . . ." (Emphasis added.) Id. A veterinary clinic is consistent with this stated purpose. First, veterinarians provide professional services. They are practitioners of veterinary medicine who hold specialized medical degrees and are licensed and supervised by the state department of health. See General Statutes §§ 20-197, 20-198 and 20-199. A veterinarian provides medical and dental services for animals and therefore is similar to and consistent with, the professional and personal services referred to in the regulation. See New Canaan Zoning Regs., c. 60, art. X, § 60-10.1 (A). Second, a visit to a veterinarian generally is "single-purpose" because animals generally are not admitted to shops, banks, restaurants and other facilities, and, because an appointment is required to obtain a veterinarian's services, it is a "special-purpose" trip.

Given the text, meaning and purpose of § 60-10.1 of the town's zoning regulations, we conclude that the proposed veterinary clinic in the present case is a "similar health-oriented" office permitted in the business A zone.[10] Accordingly, we conclude that the trial court

---

[10] The plaintiffs rely on *Tanner* v. *Board of Appeals*, 61 Mass. App. 647, 813 N.E.2d 578 (2004), to assert that "medical, dental or similar health-oriented offices" in § 60-10.1 (B) of the town's zoning regulations include only those treating humans, not animals. See id., 650 ("we think reasonable [the board's] interpretation of the word 'hospital,' as used in the by-law, to describe a facility for the medical treatment of persons but not animals"). The plaintiffs in *Tanner* had applied for a special permit to expand their already existing veterinary hospital. Id., 648. Importantly, the parties in

properly determined that the proposed veterinary clinic is a permitted use in that zone.

Because we have concluded that a veterinary clinic is a permitted use as of right in the business zone A, we further determine that the defendants are entitled to a zoning permit as a matter of right without reference to the conditions imposed by the board. In *Abbadessa* v. *Board of Zoning Appeals*, 134 Conn. 28, 54 A.2d 675 (1947), this court addressed a similar situation. The plaintiff, seeking a permit which would allow her to continue to use a lot she owned for a nonconforming purpose, applied to the building inspector of the town for approval of her use of the lot for parking. Id., 30. Her application was denied by the building inspector as a nonconforming use of the property, and the plaintiff thereafter appealed to the board of zoning appeals. Id., 31. The board of zoning appeals, after hearing the matter, "concluded that the use of the premises constituted a nonconforming use . . . [but] decided to grant the appeal on [a specific] condition . . . ." Id. On appeal, this court recognized that the plaintiff's use of the lot was "merely the continuance of an existing nonconforming use," so that it "carrie[d] with it all the incidents of that use which appertained to it when zoning was established in the city . . . ." Id., 34. This court therefore concluded that "[t]he defendant board [of zoning appeals] had no authority to impose, as a condition of its use for parking . . . a [specific] requirement . . . ." Id.

As in *Abbadessa*, Gen Three, LLC, in the present case "acted reasonably when [it] sought approval from the

*Tanner* disputed the meaning of the term "hospital," and the Massachusetts Appeals Court concluded that "hospitals" are "institutional uses ordinarily designed to support and serve the needs of people" based on regulatory context and relevant Massachusetts statutes. Id., 650. In the present case, the dispute centers on a broader term, i.e., "health," and a different statutory and regulatory context. *Tanner*, therefore, is inapposite.

official whose duty it is to enforce the ordinance." Id. The zoning enforcement officer then referred the application to the commission because of uncertainty as to the interpretation of the regulation at issue. When the commission determined that a veterinary clinic constitutes a use permitted by the regulations in the business A zone, it then lacked authority to impose any conditions on the issuance of the permit. The veterinary clinic became a permitted use as a matter of right. "If an application conforms to the standards set forth in the regulations, the enforcement officer has no discretion and must issue the certificate." *Langer* v. *Planning & Zoning Commission*, 163 Conn. 453, 456, 313 A.2d 44 (1972). Accordingly, we conclude that the defendants are entitled to a zoning permit as a matter of right, without the imposition of any conditions.[11]

The judgment is affirmed.

In this opinion NORCOTT and KATZ, Js., concurred.

ZARELLA, J., dissenting. Because I respectfully disagree with the majority's conclusion that the term "medical, dental or similar health-oriented offices" in chapter 60, article X, § 60-10.1 (B), of the New Canaan zoning regulations includes a veterinary facility, I dissent. Under the doctrine of ejusdem generis, when a statute or ordinance sets forth a specific enumeration of things, "general terms will be construed to embrace things of the same general kind or character as those specifically enumerated." (Internal quotation marks omitted.)

___

[11] After the publication of our initial decision in *Heim* v. *Zoning Board of Appeals*, 288 Conn. 628, 953 A.2d 877 (2008), the defendants filed a joint motion for reconsideration, contending that once we affirmed the trial court's decision interpreting the New Canaan zoning regulations as permitting a veterinary clinic in the business zone A as a matter of right, it was inappropriate to consider the imposition of conditions for that use. We agree, and, simultaneous with the publication of this decision, we grant the defendants' joint motion for reconsideration.

*Hackett* v. *J.L.G. Properties, LLC*, 285 Conn. 498, 513–14, 940 A.2d 769 (2008). Rather than looking at the definition of "health," the majority should more appropriately look to the specifically enumerated terms, that is, "medical" and "dental." These terms, in common parlance, clearly refer to services rendered to people, not animals. Thus, the general item enumerated, "similar health-oriented offices," also should be interpreted to refer to health-oriented facilities for humans. In my experience, the physical requirements and the problems created by a veterinary office are significantly different from those of a medical office.[1] Thus, I would suggest that the regulation never contemplated the inclusion of veterinary clinics in the phrase "similar health-oriented offices." Although people on occasion may bark at one another, this does not lead to the conclusion that the operation of a veterinary facility is of the same kind or character as a medical or dental office, or that a veterinary facility was contemplated to be within the scope of the zoning regulation.

SCHALLER, J., dissenting. I respectfully disagree with the majority's conclusion that the phrase "medical, dental or similar health-oriented" offices in chapter 60, article X, § 60-10.1 (B) of the New Canaan zoning regulations includes a veterinary facility. Although I agree generally with the rationale expressed in Justice Zarella's dissent, I write separately to emphasize that the key term in the regulation is not " 'health-oriented' " standing alone, which can apply broadly to animals as

---

[1] The named defendant, the zoning board of appeals of the town of New Canaan, apparently recognized these differences because it granted the zoning permit application of the defendant Gen Three, LLC, subject to certain conditions, including (1) limited hours of operation, (2) that it would refer after-hour emergencies to other veterinary clinics, (3) that it would not have boarding or grooming facilities on site, and (4) that it would limit to two the number of facilities for animals that require overnight stays. The trial court appropriately determined that these conditions were illegal.

well as humans, but " *'similar* health-oriented' " which, in my view, restricts the permitted uses to human health-oriented applications. (Emphasis added.) Even if, as the majority asserts in footnote 9 of its opinion, the terms "medical" and "dental" are not strictly limited to human health purposes (although it would be unusual to refer to an office for *animal* dentistry), medical and/ or dental offices for *veterinary* purposes certainly are not similar to human health care facilities in common parlance and understanding. I believe that a reasonable interpretation of the language of the regulation indicates that it is restricted to health-oriented offices for the care of humans. See *ATC Partnership* v. *Coats North America Consolidated, Inc.*, 284 Conn. 537, 545, 935 A.2d 115 (2007) ("[i]n construing a statute, common sense must be used and courts must assume that a reasonable and rational result was intended" [internal quotation marks omitted]).

For the foregoing reasons, I respectfully dissent.