******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

CHRISTOPHER MICHOS ET AL. *v.* PLANNING
AND ZONING COMMISSION OF THE
TOWN OF EASTON ET AL.
(AC 35796)

Beach, Sheldon and Pellegrino, Js.

*Argued April 17—officially released July 15, 2014*

(Appeal from Superior Court, judicial district of
Fairfield, Hon. Richard P. Gilardi, judge trial referee.)

*Michael T. Bologna*, for the appellants (plaintiffs).

*Ira W. Bloom*, with whom, on the brief, was *Brian
A. Lema*, for the appellee (named defendant).

*John F. Fallon*, for the appellee (defendant New
England Prayer Center, Inc.).

*Opinion*

SHELDON, J. This is an appeal by the plaintiffs, Christopher Michos, Amalia Michos and Colleen Adriani, from judgment of the Superior Court dismissing their appeal from the decision of the defendant Planning and Zoning Commission of the Town of Easton (commission), granting, with conditions, the application for a special permit filed by the defendant New England Prayer Center, Inc. (prayer center) to establish a place of worship and parking area on property adjacent to the plaintiffs' property. On appeal, the plaintiffs claim that the court erred in interpreting the applicable zoning regulations with respect to the location and amount of parking for the prayer center, thereby permitting 80 percent of the proposed parking to be located in front of the prayer center in violation of the regulations. The commission and the prayer center claim that the court correctly determined that the commission acted fairly and with proper motive in interpreting the applicable zoning regulations when granting the prayer center's special permit. For the following reasons, we reverse the judgment of the Superior Court.

The court, in its memorandum of decision, set forth the following facts and procedural history. "On May 18, 2010, the prayer center submitted a special permit application to the commission, seeking to establish a place of worship on land that it leased from the town of Easton. . . . The land is located in an area of town that is zoned for single-family residences. At its meeting of August 23, 2010, the commission approved the prayer center's special permit application subject to eleven special conditions, enunciated in a 'Resolution of Approval.' . . .

"[On appeal to the Superior Court, t]he plaintiffs argue[d] that the prayer center's application failed to comply with the Easton zoning regulations (regulations), specifically § 7.3.4, in that parking for the facility is located in the front yard of the property. The plaintiffs contend[ed] that, at a public hearing held on August 9, 2010, they raised the defect in the application, but that the commission never addressed it and granted the special permit anyway. The plaintiffs urge[d] the court to interpret the phrase 'front yard' in the regulations as meaning the entire area in front of a structure, the phrase's commonly understood ordinary meaning according to any dictionary. The plaintiffs argue[d] that § 5.4.1 of the regulations creates minimum front yards of no less than fifty feet, but that a front yard, in general, can be larger than fifty feet. Thus, they posit[ed] that a front lot setback is what results from the imposition of a minimum front yard, but that 'front yard' is not equivalent to 'front yard setback.' Additionally, the plaintiffs contend[ed] that the commission showed '[overwhelming] concern for the environmental sensitivity of the site' and that '[i]n rebuttal to the plaintiffs'

argument during the public hearing in favor of prohibiting parking in front of the structure, [prayer center's] counsel went out of his way to talk about the potential deleterious environmental effects of placing the parking behind the structure as is required by the [r]egulation.' [The plaintiffs'] state[d] that '[i]n failing to require the [prayer center] to place its parking outside the front yard, as is required by [§] 7.3.4 (A) of the [r]egulations, the defendant [c]ommission went beyond its legal authority and violated its own [r]egulations.'

"The commission filed its trial brief on January 25, 2012. The commission argue[d] that it ha[d] reasonably and consistently interpreted § 7.3.4 (A) of the regulations to mean that once the minimum fifty foot setback is applied, parking beyond the setback is permitted, and that it is entitled to reasonably interpret its own regulation, which it clearly did in this situation. It contend[ed] that this has historically been the interpretation of this regulation for previous religious institutions, allowing for proper balance and compliance with other provisions of the regulations. The commission posit[ed] that there is no definition of 'front yard' in the regulations, and that arguably, the area in front of the proposed structure is not a front yard at all, as the site plan shows the prayer center at an angle to the street with no parking immediately within 50 to 110 feet of the building entrance. Additionally, the commission argue[d] that it must fairly interpret § 7.3.4 (A) so as to not run afoul of the unreasonable burden provisions in the [Federal] Religious Land Use and Institutionalized Persons Act (RLUIPA) [42 U.S.C. § 2000cc et seq.], and that the strict interpretation advocated by the plaintiffs, which would disallow all parking in front of a religious structure, may impose a series of unreasonable burdens on such religious applicants.

"The prayer center also filed its reply brief on January 25, 2012. The prayer center argue[d] that its application for a special permit complied in all respects with the technical requirements of the regulations, and that the commission so found and granted the application. It assert[ed] that a local zoning commission has broad discretion with regard to the interpretation and application of its own regulations, and that if there are two plausible interpretations of a regulation, the court gives deference to the construction of the language adopted by the commission. The prayer center contend[ed] that the commission acted within its legal discretion in interpreting § 7.3.4 (A) and applied the term 'front yard,' in a manner consistent with the provisions of the regulations as a whole, including § 5.4.1 and the rest of § 7.3.4. The prayer center argue[d] that the commission's action should not be overruled simply because the plaintiffs suggest an alternate interpretation of the regulations. It contend[ed] that with regard to this application involving a house of worship on a 30.5 acre parcel, the plaintiffs' suggestion that § 7.3.4 (A) should be interpre-

ted to preclude totally and absolutely any parking what-soever on any portion of the property located anywhere in the front of the proposed building is not a rational or reasonable interpretation of the regulation. Additionally, the prayer center posit[ed] that when more than one interpretation of a zoning regulation is possible, restrictions upon the use of land should not be extended by implication, and doubtful language and terms subject to different interpretations should be construed against rather than in favor of restricting the use of property.

"On February 17, 2012, the plaintiffs filed their brief in reply to the defendants. The plaintiffs counter[ed] that the issues in this appeal require only construction of regulatory language, which construction is in the sole province of the court. The plaintiffs contend[ed] that the proper standard of review for the court is a de novo statutory analysis. They maintain[ed] that § 5.4.1 of the regulations establishes minimum front, side and rear yards and simply sets a minimum depth for the yards rather than defining them; rather, the common dictionary meaning of the term 'front yard' should be relied on since the term is not explicitly defined in the regulations and no ambiguity exists. The plaintiffs argue[d] that the notion that the commission has historically relied on prohibiting parking only in the minimum fifty foot setback is immaterial, since it is not in the record, and that RLUIPA is not implicated here because the regulations apply equally to churches, places of worship, museums, art galleries, private schools, private recreation clubs and nursery schools. Additionally, the plaintiffs posit[ed] that prohibition of parking in the front yard yields reasonable results aligned with Easton's town plan.

"The original return of record was filed on September 9, 2011. A supplemental return of record was filed on September 29, 2011. The court held a trial on May 10, 2012. A second supplemental return of record was filed on August 23, 2012." (Citations omitted; footnotes omitted.)

Following the trial in this matter, the court agreed with the plaintiffs that they were aggrieved, had standing to prosecute the appeal, and had timely filed and properly served the appeal. The court ultimately dismissed the appeal because it disagreed with the plaintiffs on "the impact of § 7.3.4 (D) of the regulations on the outcome of th[e] appeal." Specifically, the court reasoned as follows: "The plaintiffs state, in citing § 7.3.4 (D), that [i]n drafting its regulations, the commission itself equates parking in the front yard [§ 7.3.4 (A)] with parking in front of the structure [§ 7.3.4 (D)]. While the court agrees that this is a valid interpretation of § 7.3.4 (A) and (D) read together, the plaintiffs fail to realize what § 7.3.4 (D) allows. . . . [Section] 7.3.4 (D) states: Should the layout of the property including the improvements and the parking warrant parking to be

located in front of the structure, the Commission may permit up to 10 percent of the off-street parking in front of the structure provided that the parking is designed and limited to visitor use and the foregoing standards. Section 7.3.4 (D) explicitly allows parking in front of the structure, ironically the plaintiffs' favored definition of front yard, in some circumstances. Under the rules of statutory construction, the plain meaning of this specific regulation allows parking in front of the structure. As there is no argument addressed to the merits of § 7.3.4 (D), the court does not need to address whether the circumstances enunciated in that regulation are met in this case. Section 7.3.4 (D) plainly allows parking in front of a structure." (Footnotes omitted; internal quotation marks omitted.) This certified appeal followed.

"Resolution of this issue requires us to review the relevant town regulations. Because the interpretation of the regulations presents a question of law, our review is plenary. . . . We also recognize that the zoning regulations are local legislative enactments . . . and, therefore, their interpretation is governed by the same principles that apply to the construction of statutes. . . . Whenever possible, the language of zoning regulations will be construed so that no clause is deemed superfluous, void or insignificant. . . . The regulations must be interpreted so as to reconcile their provisions and make them operative so far as possible. . . . When more than one construction is possible, we adopt the one that renders the enactment effective and workable and reject any that might lead to unreasonable or bizarre results." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Heim* v. *Zoning Board of Appeals*, 289 Conn. 709, 715–16, 960 A.2d 1018 (2008).

In the present case, we will examine the language of the regulation at issue to determine the meaning of "front yard" in § 7.3.4 (A) of the regulations and whether the court properly applied the exception provided for in § 7.3.4 (D) to the facts of this case.[1]

We begin with the text of the regulation. Section 7.3.4 of the regulations provides as follows: "Location of off-street parking shall be determined according to the following standards: (A) No parking shall be permitted in the front yard except for necessary access drives. (B) No parking area shall be located within 50 feet of any property line. (C) All parking areas and access drives shall be located so as not to adversely affect the character of the neighborhood in which the premises are located. (D) Should the layout of the property including the improvements and the parking warrant parking to be located in front of the structure, the Commission may permit up to 10 [percent] of the off-street parking in front of the structure provided that the parking is designed and limited to visitor use and the foregoing standards."

The key term in § 7.3.4 (A) of the regulations, "front yard," is not defined or explained anywhere in the regulations. In such a situation, General Statutes § 1-1 (a) provides: "In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language; and technical words and phrases, and such as have acquired a peculiar and appropriate meaning in the law, shall be construed and understood accordingly." "If a statute or regulation does not sufficiently define a term, it is appropriate to look to the common understanding of the term as expressed in a dictionary." (Internal quotation marks omitted.) *Heim* v. *Zoning Board of Appeals*, supra, 289 Conn. 717. Although the term "front yard" is not well defined, as the court discovered, the term "frontage" is, however, well defined, with substantial similarity in a number of dictionaries, each embracing a broad interpretation of the term. See, e.g., Merriam-Webster's Collegiate Dictionary (11th Ed. 2003) ("frontage" is "the land between the front of a building and the street"); American Heritage Dictionary of the English Language (4th Ed. 2002) ("frontage" is "the land between a building and the street"); Webster's Third New International Dictionary (2002) ("frontage" is "the land between the front of a building and the street," and "front yard" is "an area in front of a house"); The Random House Dictionary of the English Language (2d Ed. 2001) ("frontage" is "the land between a building and the street"). The common usage of "front yard," therefore, appears to be the area in front of a structure, between the structure and the street.

The only other provision in the regulations that specifically mentions "front yard" is § 5.4.1, which sets forth the "minimum front yard" requirements as follows: "The minimum front yard shall measure no less than 50 feet at any point when measured perpendicularly to the street line, but in no case shall the structure be less than 75 feet from the center line of the paved surface of any street. The minimum side and rear yards shall measure no less than 40 feet when measured perpendicularly to the respective yard lines." In the present case, the parking for the prayer center was granted by a special permit, and thus is controlled by article 7 of the regulations, which relates to all matters pertaining to special permits, and more specifically, § 7.3.4, which concerns off-street parking, and thus § 5.4.1 does not control the outcome of this case. The defendants urge this court to interpret "front yard," as that term is used in § 5.4.1, to conclude that the proposed parking for the prayer center is actually located entirely outside of the front yard, and thus that the court properly dismissed the plaintiffs' appeal. Section 5.4.1, however, defines the term "minimum front yard"—a term that is not found anywhere in § 7.3.4, and therefore § 5.4.1 sheds no light on our interpretation of "front yard."

"We always must construe a regulation in light of its purpose. See *West Hartford Interfaith Coalition* v. *Town Council*, 228 Conn. 498, 508, 636 A.2d 1342 (1994) ([a] statute . . . should not be interpreted to thwart its purpose . . .)." (Internal quotation marks omitted.) *Heim* v. *Zoning Board of Appeals*, supra, 289 Conn. 718. The purpose of § 7.3.4 (A) through (C) of the regulations is to impose restrictions on the location and design of parking pursuant to special permits, whereas § 7.3.4 (D), sets forth a conditional exception to the restrictions in subsections (A) through (C). Although the court agreed with the plaintiffs that § 7.3.4 (A), in particular, expressly prohibits parking in the front yard, it concluded, notwithstanding, to the contrary, that § 7.3.4 (D), created an unconditional exception that allows for such parking. The court quoted the language of § 7.3.4 (D) in its analysis, but failed to take into consideration the plain language of the phrase, "up to 10 [percent] of the off-street parking," by concluding that the mere existence of this section permits parking in the front yard without any consideration as to the amount of parking that was proposed to be in the front yard of the prayer center. The court concluded that "[u]nder the rules of statutory construction, the plain meaning of [§ 7.3.4 (D)] allows parking in front of the structure. . . . Section 7.3.4 (D) plainly allows parking in front of a structure." (Footnote omitted.) The court then declined to "address whether the circumstances enunciated in that regulation are met in this case," because no party raised an argument as to the applicability of § 7.3.4 (D) in its briefs. The court clearly failed to give fair import to the terms of the conditional exception in § 7.3.4 (D) by extending it beyond the regulation's narrow language and purpose. Given the text, meaning, and purpose of § 7.3.4 of the regulations, we conclude that the proposed parking for the prayer center would violate the regulations. Accordingly, we conclude that the court erred in dismissing the plaintiffs' appeal by concluding, without considering the conditional exceptions set forth therein, that § 7.3.4 (D) permits the proposed parking in the front yard of the property.

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.

[1] We acknowledge that General Statutes § 1-2z requires a threshold determination of whether the regulation is ambiguous. In both their brief and at oral argument, the plaintiffs claimed that the language of § 7.3.4 (A), that "no parking shall be permitted in the front yard," is clear and unambiguous text. We agree. Although the regulations do not explicitly define the term "front yard," the court agreed with the plaintiffs' reading of § 7.3.4 (A) and (D), that "[i]n drafting its regulations, the commission itself equate[d] parking 'in the front' yard' [§ 7.3.4 (A)] with parking 'in front of the structure' [§ 7.3.4 (D)]."