NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-358

A.D.

vs.

M.D.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

On March 11, 2020, the same day she served the defendant with her January 2020 complaint for divorce, the plaintiff obtained an ex parte abuse prevention order under G. L. c. 209A from the Probate and Family Court with a return date of March 23, 2020.  Beginning on March 17, 2020, the Commonwealth's court houses were closed to the public, and Probate and Family Court Standing Order 2-20 (2020) (Standing Order 2-20), requiring virtual hearings by telephone or videoconference "[w]henever practicable," became effective.[1]  The 209A order was extended several times following hearings that were not in person because of the standing order, and the defendant appeals from two of

_____

[1] This standing order instituted temporary changes in court procedure due to the COVID-19 pandemic.  See Christie v. Commonwealth, 484 Mass. 397, 399 (2020).

those extension orders:  one that followed a nonevidentiary telephonic hearing on August 27, 2020 (August 2020 extension), and one that entered on February 22, 2021, after an evidentiary hearing over Zoom (February 2021 extension).

On appeal, the defendant claims that (1) the August 2020 extension order violated his due process rights, and further, the order was not supported by the evidence because it was based solely on the representations of plaintiff's counsel; (2) the evidence in support of the February 2021 extension order did not show a threat to the parties' two young children such that they should be included in that order; and (3) neither extension order should have issued "where the circumstances were simply situational and where any fear of imminent physical harm no longer existed."  The plaintiff counters that the appeal must be dismissed because the defendant's notices of appeal were filed before the extension orders were docketed, and even if the appeal is properly here, the 209A order was properly extended in August 2020 and February 2021.  We affirm, giving a detailed recitation of the facts to frame our analysis.

Background.  1.  Initial order.  A Probate and Family Court judge issued the ex parte order after a March 11, 2020 hearing at which the plaintiff appeared but for which we have no transcript.

2

The ex parte order prohibited the defendant from contacting the plaintiff or the children, from coming within one hundred yards of the plaintiff and the children, and required the defendant to stay away from the marital home and the children's schools.  On March 23, 2020, the parties appeared by phone before a second Probate and Family Court judge, with counsel, for the two-party hearing on the plaintiff's request for an extension.

We do not have a transcript of the March 23 hearing, or the benefit of findings by the second judge.  When extending the order to May 18, 2020, the same date on which he scheduled a review hearing in the divorce, the judge stated that it was modified "per court order of today's date attached hereto and incorporated by reference."  That order, in turn, was the parties' stipulation to a modification (1) to permit limited contact and communication between the defendant and plaintiff, (2) to allow the defendant to come within one hundred yards of the plaintiff to pick up and drop off the children, and (3) to allow the defendant contact and supervised parenting time with the children.  On May 20, 2020, nunc pro tunc to May 18, 2020, the order was extended by the second judge, without modification and without the parties' appearing, to May 27, 2020.  The review hearing in the divorce was also rescheduled to that date.

On May 27, 2020, the parties appeared by phone before the second judge, with counsel, for an evidentiary hearing on the plaintiff's request for a one-year extension.  Once again, we do not have a transcript of the hearing or the benefit of findings by the judge.  After the May 27 hearing, the second judge extended the order "without modification" for three months, rather than one year, to August 27, 2020, the same day for which he scheduled a pretrial conference in the divorce proceeding.

2.  <u>August 2020 extension</u>.  On August 27, 2020, the parties appeared before the second judge for a third time, with counsel and over the phone, for the return date of the 209A order and the pretrial conference in the divorce proceeding.  After the parties were sworn, the plaintiff's counsel requested a six-month extension of the 209A order, representing that "since the entry -- the extension of the order back in May, the husband still is, from the wife's perspective, exhibiting those same behaviors that he had during the marriage."  Counsel continued,

> "And I'll give you some examples, and my client can certainly testify.  I understand that this isn't an evidentiary hearing, but she's happy to answer some brief questions should the Court require.

> "You know, she -- something as simple as trying to select a real estate agent to list the [marital] home.  Husband tried to just control every situation.  You know, objections to who the wife feels comfortable using.

> "Something as simple as there was an issue with the parties' underground sprinkler system, and there were some 15 messages to the wife about it.

4

"So this sort of, you know, need for the husband to control every situation, his lack of patience, his excessive behavior has continued, and that makes the wife think nothing's changed since what she dealt with during the marriage."

The defendant's attorney asked to question the plaintiff, but the request was denied, with the second judge saying, "[W]e're not having an evidentiary hearing today. . . . I believe we had one back in May." Defense counsel then argued that there was no longer a need for the order because, among other things, there had been "[n]o problems with the children with regards to school, medical issues"; no violations of the order by the defendant; and "no threatening behavior whatsoever." While he agreed there had been "some disagreements about issues on emails," the defendant's attorney felt "that all the communications I represent have been cordial between the parties." Defense counsel further represented that the defendant was enjoying quality time with the children, was in counseling, was agreeable to a parenting coach, and intended to continue being "very cautious" and "reasonable and accommodating to" the plaintiff, as he had been by, for example, not watching the dog at her request without having the order amended and by staying "as far back as he could" at an outside dance recital on a hot day so the plaintiff and the children could be in the shade. Defense counsel suggested that "it's now time for the

5

parties to focus on the well-being of the children and work toward an amicable resolution to these ongoing divorce and custody proceedings," and that the defendant was "amenable to further temporary orders from this Court that include reasonable ongoing limitations on contact and communications with the parties." In fact, on August 15, 2020, the parties had agreed to such limitations, by stipulating that the 209A order could be modified to allow the defendant to (1) attend more of the children's events, provided he gave the plaintiff twenty-four hours' notice, and (2) meet the plaintiff at a mutually agreed location to exchange the dog.

The second judge modified the order "per [this] stipulation" and extended it for six months as the plaintiff had requested. A contemporaneous docket entry stated, "Order Issued." The defendant filed a notice of appeal of the August 2020 extension order that was stamped "received" by the register's office on September 8, 2020, but which was not docketed on that date.

3. February 2021 extension.[2] On February 22, 2021, the parties and their attorneys appeared by Zoom before a third

_____

[2] There was a modification of the order in the interim, which entered after a November 5, 2020, telephonic pretrial conference before the second judge in the divorce proceeding. We do not have a transcript of that hearing, but, after it, the 209A order was modified pursuant to another stipulation of the parties to allow the defendant to communicate with the plaintiff about

6

Probate and Family Court judge for the return date of the 209A order.  The plaintiff asked for a one-year extension.  One month earlier, the parties had signed a separation agreement, which was introduced as an exhibit at the hearing, but was not included in the record on appeal.  Among other things, it provided for shared legal custody of the children, increased parenting time for the defendant with "both parties agree[ing] to drop off the children to each other's residences," and to a parenting coordinator to act as an "intermediary," one of several "safety measures . . . so that the parties can minimize their contact."

At the February 22, 2021 hearing, both parties testified. After hearing arguments of counsel, the third judge said, "All right, I've heard you both; I do find that the plaintiff has a reasonable fear of harm.  I am going to continue the order but I'm not going to continue it for a year; I'm going to continue it for six months, and I'm going to continue it with the terms and conditions in accordance with the order submitted in connection with the divorce."  That order struck or amended the provisions of the 209A order relating to, among other things,

matters before the parenting coordinator and regarding the sale of the marital home; "to reduce the 100 yard distance to permit drop off and pickups for parenting time"; and "to comport with parenting plan in parties['] 10/15/20 stipulation and other agreed upon changes to the parenting plan."

7

custody and visitation with the children, permitted contact between the parties for events relating to or involving the children, and allowed the defendant to enter the marital home to pack and remove his belongings.

The third judge's decision was reflected by a docket entry stating, "Order Issued." On March 18, 2021, the defendant served, and soon thereafter the plaintiff received, a notice of appeal of the February 2021 extension order that was not docketed on that date and bore no sign of receipt by the register's office. On April 6, 2021, the parties' divorce became final, though a judgment did not enter until June 24, 2021.

Effective July 12, 2021, Standing Order 2-20 was superseded, and court operations returned to in person. See Probate and Family Court Standing Order 1-21 (2021). In March 2022, nothing having happened on the defendant's appeals of the August and February extension orders, the defendant filed a motion to compel assembly of the record. On April 4, 2022, the notice of appeal of the August 2020 extension order was docketed along with several other pleadings and orders from 2020 and 2021, including the August 2020 and February 2021 extension orders, and the record was assembled. Two days later, (1) the notice of appeal of the February 2021 extension order was

8

docketed by entry stating "filed 3/18/2021," and (2) the register issued an updated notice of assembly.

Discussion. 1. Jurisdiction. We are not persuaded by the plaintiff's claim that the appeal must be dismissed because the defendant's notices of appeal predated the docketing of the August and February extension orders. The two contemporaneous docket entries "Order Issued" were sufficient to "enter" the extension orders for the purpose of starting the time to appeal. See Commonwealth v. Mullen, 72 Mass. App. Ct. 136, 138 (2008) (defining "date of entry"). Those entries were not affected by the register's re-docketing of the orders on April 4, 2022. Because the "received" stamp on the notice of appeal of the August extension order established that it was "filed" on September 8, 2020, see Samuels v. SUFA Corp., 38 Mass. App. Ct. 922, 922 (1995), within the thirty-day period prescribed by Mass. R. A. P. 4 (a) (1), as appearing in 481 Mass. 1606 (2019), we are satisfied that the appeal of the August 2020 extension order is timely.

There is no similar stamp on the notice of appeal of the February 2021 extension order, but, when it was finally docketed, the entry indicated the document was "filed" on the same day it was served, March 18, 2021, within thirty days of entry of the February 2021 extension order. Thus, the appeal from that order is also timely. We will not fault the defendant

9

or the register for court disruptions that seem to have affected the docketing of orders and filings in this case, especially where the plaintiff timely received the notice of appeal of the February extension order and asks us to affirm that order on the merits.

2. Initial order. Because "[w]e have no transcript of what transpired" at the March 23 hearing after notice, we "assume that it focused on the allegations contained in the [plaintiff]'s complaint and affidavit[]," Brookline v. Goldstein, 388 Mass. 443, 447 (1983), which were that the defendant caused physical harm to the plaintiff and made her engage involuntarily in sexual relations. See G. L. c. 209A, § 1 (a), (c) (defining "abuse" to include these acts). We will also assume that the second judge credited the plaintiff because he extended the order. Quilla Q. v. Matt M., 102 Mass. App. Ct. 237, 238 n.3 (2023).

There is no evidence regarding the length of extension the plaintiff requested at the initial March 23, 2020, hearing. "The Trial Court's guidelines for proceedings under G. L. c. 209A strongly suggest that an order after notice should be for a minimum of one year, unless the plaintiff requests a shorter period or the court finds that a shorter period is warranted." Moreno v. Naranjo, 465 Mass. 1001, 1002 n.2 (2013), citing Guidelines for Judicial Practice: Abuse Prevention

10

Proceedings § 6.02 & commentary (Sept. 2011).[3] At the same time, during the pandemic, Standing Order 2-20 mandated that 209A orders issued at a virtual hearing after notice "be issued only until such date at which the court can schedule an in-person hearing." Standing Order 2-20(B)(3). The second judge made no findings about May 27, 2020, being the first date at which an in-person hearing could be scheduled, or that extending the order for two months, to the date of the next event in the parties' divorce, was reasonably necessary to protect the plaintiff from further abuse but "an extension of a full year was not." Moreno, supra at 1003. If the judge based his decision on factors having to do with the divorce, that was improper. See id. at 1002. "The exclusive focus must be on the applicant's need for protection." Singh v. Capuano, 468 Mass. 328, 334 (2014).

3. August 2020 extension. Decisions to extend 209A orders "must be based on the evidence, after hearings," Singh, 468 Mass. at 335, where each party had "a fair opportunity to present his case." S.T. v. E.M., 80 Mass. App. Ct. 423, 430-431 (2011). "A meaningful opportunity to be heard includes an opportunity to address the material and determinative

---

[3] The guidelines were revised after the events at issue here. See Guidelines for Judicial Practice: Abuse Prevention Proceedings (Oct. 2021).

allegations at the core of a party's claim or defense and to present evidence on the contested facts." Idris I. v. Hazel H., 100 Mass. App. Ct. 784, 788 (2022).

Here, the plaintiff's counsel made factual allegations that went to the core of the plaintiff's claim of continuing fear, and which the defendant sought the opportunity to challenge. The second judge should not have denied that request. "[A]rguments of counsel are not a substitute for evidence," Idris I., 100 Mass. App. Ct. at 789, and it is well settled that "[a] defendant has a general right to cross-examine witnesses against him." Frizado v. Frizado, 420 Mass. 592, 597 (1995). We appreciate that the second judge was grappling with logistical issues caused by the pandemic, that he did not have the benefit of our decision in Idris I., and that there could have been "a tacit agreement" to proceed on August 27 by representations of counsel, Idris I., supra at 790-791, based on the statement by the plaintiff's attorney, "I understand that this isn't an evidentiary hearing." But plainly any such agreement ended when the defendant asked to question the plaintiff about her attorney's representations. And nothing in Standing Order 2-20 authorized extensions of 209A orders without an evidentiary hearing. See Standing Order 2-20(F). Given the circumstances, the second judge should not have extended the order without an evidentiary hearing.

12

The absence of an evidentiary hearing on August 27, 2020 is not prejudicial, however, because the defendant ultimately received an evidentiary hearing on February 22, 2021. Contrast Idris I., 100 Mass. App. Ct. at 789. Thus, the defendant had "a meaningful opportunity to be heard" on the allegations made by the plaintiff's attorney on that date, at "a full and fair hearing" on February 22. See Frizado, 420 Mass. at 598 ("Whether a defendant's constitutional rights have been violated will depend on the fairness of a particular proceeding"). Thus, we proceed to that order.

4. February 2021 extension. On February 22, 2021, the plaintiff testified to, and was cross-examined about, her continuing fear of the defendant based on his entering her garage at a time when the 209A order required him to stay near his car, see Rauseo v. Rauseo, 50 Mass. App. Ct. 911, 912 (2001) (defendant's threats included leaving packages on doorstep in violation of 209A order), and his "agitated conduct" in meetings with professionals, including the parent coordinator. Pike v. Maguire, 47 Mass. App. Ct. 929, 930 (1999). "The Probate Court judge, who had both parties before h[er] and could observe their demeanor, was entitled to credit the plaintiff's testimony." Rauseo, supra. We will not substitute our credibility determinations for hers. Against the backdrop of the abuse that gave rise to the order and prior extensions and the "notoriously

13

volatile nature of child custody and visitation battles," Pike, supra, which "authorities on domestic violence suggest [present] an increased risk of harm on separation or divorce," Champagne v. Champagne, 429 Mass. 324, 327 n.2 (1999), "[i]t was not error [for the third judge] to extend the protective order." Rauseo, supra. See Iamele v. Asselin, 444 Mass. 734, 741 (2005) ("It is the totality of the conditions that exist at the time that the plaintiff seeks the extension, viewed in the light of the initial abuse prevention order, that govern").

The defendant claims that the children should not have been included in the February extension because there was no evidence he was a threat to them. But that extension order incorporated the parties' agreement to modify the order "to comport with [the] parenting plan identified in the parties' Separation Agreement and any other mutually agreed upon changes," which included striking so much of the 209A order that related to custody and permitting the defendant all forms of contact with the children. Thus, it is not clear to us how the defendant is restrained above and beyond his own stipulation.

14

Conclusion.[4]  The orders dated August 27, 2020, and February 22, 2021, extending the G. L. c. 209A order, are affirmed.

                                So ordered.

                                By the Court (Ditkoff,
                                  Singh & Grant, JJ.[5]),

                                *Joseph F. Stanton*

                                Clerk


Entered: March 7, 2023.

---

[4] The plaintiff's request for appellate attorney's fees and costs is denied.  "Although the . . . appeal is unsuccessful, it is not frivolous."  Perry v. Zoning Bd. of Appeals of Hull, 100 Mass. App. Ct. 19, 25 n.10 (2021), quoting Filbey v. Carr, 98 Mass. App. Ct. 455, 462 n.10 (2020).

[5] The panelists are listed in order of seniority.

15